(Decided 4th February, 1892.)

---

JOHN A. BAKER *vs.* CYRUS KEISER and ELIAS KEISER, Executors of LEWIS KEISER, Garnishees of MILTON and LEVINA CREAMER.

*Construction of Will—Life tenant—Alienation of Income—Attachment.*

Under a bequest of certain property "in trust for the benefit of L. during her life, receiving her annual interest and income therefrom, the said share to be securely invested, as soon as declared, and after her death to be equally divided between her children," no restraint is placed on the alienation by the life-tenant of her income, and the same is therefore subject to attachment by her creditors.

APPEAL from the Circuit Court for Montgomery County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff asked the Court to grant the following instructions:

1. That there is nothing in the provisions of the last will and testament of Lewis Keiser, deceased, offered in evidence in this cause, that protects the income of or interest on that portion of the estate of said testator, left in the hands of his executors for the benefit of Levina Creamer, one of the defendants in the judgment—a transcript of which is the basis of the attachment in this cause, and is offered in evidence,—during her life, from the effect and operation of said attachment, and upon the conceded testimony in the cause the plaintiff is entitled to recover.

2. That there is nothing in the provisions of the last will and testament of Lewis Keiser, deceased, offered in evidence in this cause, that protects the income of or interest on that portion of the estate of said testator left in the hands of his executors for the benefit, during her life, of Levina Creamer, one of the defendants in the judgment—a transcript of which is the basis of the attachment in this cause, and is offered in evidence, from the effect and operation of said attachment.

The Court (VINSON and LYNCH, J.,) refused to give the instructions, and the plaintiff excepted; and the judgment being against him he took this appeal.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*James B. Henderson,* (with whom was *George Peter,* on the brief,) for the appellant.

An attachment on judgment is used only to reach a credit of the defendant, and if the amount due Mrs. Creamer from the garnishees in this case is not subject to attachment, it is difficult to perceive what kind of a credit is in contemplation when it is declared that a judgment against a married woman and her husband may be collected by attachment in the same manner as if the defendants were not husband and wife.

If the income from the fund set apart for the benefit of Mrs. Creamer can be alienated and anticipated by her, it is liable to attachment for her debt, provided such debt is based upon a written contract, signed jointly with her husband. This is unquestionably the test. *Warner, et al. vs. Rice and Knell, Trustees, &c.*, 66 *Md.*, 436.

The exclusion of the right of alienation or of anticipation, and the protection from liability for debt, can only be affected by the use of clear and explicit terms.

In the case of *Pybus vs. Smith*, 1 *Vesey, Jr.*, 194, 3 *Brown's Ch. Reps.*, 347, in which the separate estate of a married woman was first given judicial recognition, Lord THURLOW said: "That if it was the intention of a parent to give a provision to a child, in such a way that she could not alienate it, he saw no objection to its being done; but such intention must be expressed in *clear terms*," and the Courts have sanctioned no departure from this requirement from that time to this. *Clarke vs. Pistor*, 3 *Brown's Chan. Rep.*, 346; *Witts vs. Dawkins*, 12 *Vesey*, 501; *Sturgis vs. Corp*, 13 *Vesey*, 190; *Browne vs. Like*, 14 *Vesey*, 302; *Acton and others vs. White*, 1 *Simons & Stuart's Rep.*, 429; *Ross' Trust*, 1 *Simons' New Rep.*, 196; *Baker vs. Bradley*, 2 *Smale & Giff.*, 561.

The intention to protect from liability for debt must be clearly expressed. *Tyler vs. Lake*, 4 *Simons' Rep.*, 144; *Blacklow vs. Laws*, 2 *Hare*, 49; *Younghusband vs. Gisborne*, 1 *Collyer*, 400; *Wallace vs. Smith and McGuffey*, 2 *Handy*, 79; *Knefler vs. Shreve*, 78 *Ky.*, 303; *Palmer vs. Stevens, et al.*, 15 *Grey*, 343; *Sparhawk vs. Cloon*, 125 *Mass.*, 263.

There is nothing in the language of the will in reference to the income from Mrs. Creamer's part of the estate that indicates an intention on the part of the testator to prohibit alienation, prevent anticipation, or protect it from liability for her debts. She is to "receive

Baker *vs.* Keiser.

her annual interest and income therefrom.'' There is no greater significance to be attached to this expression than if the testator had directed the executors to pay her the annual interest and income. The terms to pay and to receive are reciprocal. There is no language used that suggests an intention to exclude the rights of others whether creditors or alienees. The executors are not directed to pay the income into '' her own proper hands,'' or ''into her own hands and not into another, whether claiming by her authority,'' as in the case of *Smith and Son vs. Towers, Garnishee,* 69 *Md.,* 83. The money is not to be paid to her for her sole, separate and *exclusive* use and benefit. The income is not in express terms, nor by necessary or reasonable implication, made inalienable.

*H. M. Talbott,* for the appellees.

The doctrine established by the English Courts overrules any and all attempts on the part of the testator, no matter how carefully drawn or expressed, to prevent alienation or assignment by the *cestui que trust,* and renders all life estates devised in trust liable for the debts of the *cestui que trust,* unless there is a *cesser,* or limitation over in the event of alienation, or attempt at alienation, or bankruptcy.

It will be observed that nearly all the cases where this doctrine was announced arose under the bankruptcy laws, and upon the application of the assignees of the *cestui que trust,* or the Commissioners in Bankruptcy. .

But even the rigid rules of the English Courts have been relaxed, and an exception made in favor of trusts for the benefit of married women. *Bucton vs. Hay,* 11 *Ch. Div.,* 645; *Sperling vs. Rochfort,* 8 *Ves.,* 175.

The power of alienation is not a necessary incident to an equitable estate for life, but the testator may, in the exercise of his power, so limit his bounty that the *cestui que trust* has but the bare right to receive, what, by the

direction of his will, the trustees are bound to pay over. *Nichols, Assignee vs. Eaton, et al.*, 91 *U. S.*, 725; *Leavitt vs. Beirne*, 21 *Conn.*, 8; *Fisher vs. Taylor*, 2 *Rawle*, 33; *Broadway Nat. Bank vs. Adams*, 133 *Mass.*, 170; *Perkins and another, Ex'rs vs. Hays, et al.*, 3 *Gray*, 405; *Pope's Ex'rs vs. Elliott & Co.*, 8 *Ben. Monroe*, 56; *Holdship vs. Patterson*, 7 *Watts*, 547; *Still vs. Spear*, 45 *Pa.*, 168; *Shankland's Appeal*, 47 *Pa.*, 113; *Smith & Son vs. Towers, Garn.*, 69 *Md.*, 84, 89; *Rife vs. Geyer*, 59 *Pa.*, 393.

The Court cannot enlarge the bounty of the testator, nor create a fund for the benefit of creditors, out of what was intended solely for the use and maintenance of the testator's beneficiary. *Broadway Nat. Bank vs. Adams*, 133 *Mass.*, 170; *Nichols, Assignee vs. Eaton, et al.*, 91 *U. S.*, 725; *Smith & Son vs. Towers, Garn.*, 69 *Md.*, 84, 89.

By the fifth item of the will of Lewis Keiser, the intention of the testator was to provide a fund, the income from which was for the sole and exclusive benefit of his daughter, Levina Creamer, free and clear of all claims of her husband, or her creditors, and such income is not subject to attachment in the hands of the trustees. *Smith & Son vs. Towers, Garn.*, 69 *Md.*, 84, 89; *Still vs. Spear*, 45 *Pa.*, 168.

IRVING, J., delivered the opinion of the Court.

Lewis Keiser, of Montgomery County, by his will, made in September, 1886, directed in the first clause of his will that his executors should sell all his real and personal estate. After directing his debts to be first paid, and making certain provisions for his wife and one of his daughters, by the fourth clause of his will he provided as follows: "I do hereby give, bequeath, and devise all the rest and residue of my estate, both real and personal, subject to the above-mentioned special charges, to my six children and heirs-at-law, namely: Eli Keiser, of Montgomery County, Maryland; Cyrus

Keiser, of said County and State; Ephraim Keiser, of Washington City; Levina Creamer, of said city; Leah Creamer, of said city; and Lydia Creamer, of Summit County, Ohio, to be equally divided between the said heirs, share and share alike.'' By the sixth clause he says : '' I do hereby direct and will that the share above-mentioned to go to my daughter, Levina Creamer, is hereby devised and bequeathed unto my executors, hereinafter named, in trust for the benefit of said Levina during her life, receiving her annual interest and income therefrom, the said share to be securely invested, as soon as declared, and after her death to be equally divided between her children.''

A judgment was obtained in the Supreme Court of the District of Columbia against Milton Creamer and Levina Creamer, his wife, (upon their promissory notes) for the sum of three hundred and ninety-five dollars and ninety-eight cents ($395.98). Upon a transcript of the record of that judgment, an attachment was issued out of the Circuit Court for Montgomery County, and was laid in the hands of the appellees, as garnishees of Milton and Levina Creamer. The garnishees were duly summoned, and pleaded *nulla bona,* and the case was tried on the issue joined thereon.

At the trial it was conceded that the portion of Louis Keiser's estate allotted to Levina Creamer for life, and invested by the trustees under the will, amounted to seventeen hundred and thirteen dollars and fifteen cents; and that at the time of the trial there was in the hands of the garnishees, due Levina Creamer, the sum of two hundred and five dollars and fifty-two cents as income.

The only question in the case is whether this amount of income, in the hands of the trustees, is subject to attachment. That judgment has been recovered in accordance with section 2, of Article 45, of the Code of Public General Laws, and is enforceable under the same

section of the law of Husband and Wife, by attachment or otherwise as if the woman was not married.

In *Warner, et al. vs. Rice and Knell, Trustees, &c.*, 66 *Md.*, 440, this Court emphatically declared that it was wholly against the policy of the law to allow property, whether legal or equitable, to be fettered by restraints upon alienation; and *generally*, the Court said: "Whenever property is subject to alienation by the owner, it is subject to his debts." This was the law of England, and had always been the law in this State; but in *Smith & Son vs. Towers, Garnishee*, 69 *Md.*, 90, a majority of this Court decided "that the founder of a trust may provide, in direct terms, that his property shall go to his beneficiary to the exclusion of his alienees, and to the exclusion of his creditors." In doing so this Court followed the Supreme Court of the United States in *Nichols, Assignee vs. Eaton, et al.*, 91 *U. S.*, 725, and the case of *Broadway National Bank vs. Adams*, 133 *Mass.*, 170. This Court recognized the fact that there was great conflict of authority on the subject, in the States of this Union; and that the preponderance of authority was not in conformity with the views expressed by the Supreme Court of the United States in *Eaton's Case*, but concluded that there was nothing in the decision of *Warner vs. Rice*, 66 *Md.*, 440, which should restrain this Court from saying that the founder of the trust could by *sufficiently clear language create a trust* for a beneficiary without the power of alienation, without imposing a limitation creating *a cesser* of the trust and estate, upon attempt at alienation. In making that decision the Court was influenced by the express direction of the testator that the income, (the net income, after paying all proper charges on it,) should be paid "*into his own hands*, and *not into another*, whether claiming by his authority or otherwise." This language was so direct and explicit, that the Court regarded it as sufficient to justify its respect-

Baker *vs.* Keiser.

ing the testator's wishes, for the reasons assigned by the Supreme Court in *Eaton's Case,* and elaborated in the *Towers' Case.* In the will under consideration there is no language which by any fair and reasonable interpretation can be made to mean that the testator intended to put any restraint upon his daughter, the legatee, for life of the income of the property intended for her for life, and afterwards for her children, as to her method of collecting or using the income. The words of the trust are: "In trust for the benefit of said Levina, during her life, receiving her annual interest and income therefrom the said share to be securely invested as soon as declared, and after "her death to be equally divided between her children."

The word "receiving" means nothing more in such connection than "taking" or "having." If the words during her life were only transposed in the sentence and made to follow the word "therefrom," it would read "for the benefit of said Levina receiving her annual interest," &c. Clearly it was only intended to declare an estate for life in his daughter in one-sixth of the testator's estate, and to give the *corpus* of that share to her children. Without *importing* words into that will which are not there, and imputing an intention to the testator of which he has given no intimation by any verbal expression, we cannot say that the income was not and is not assignable by the life tenant; and if it is, there was error in holding it to be beyond the reach of creditors. Any other construction of this will and ruling in this case would be in effect saying that all life estates of like character, given in trust, are incapable of being alienated. This Court went as far as they could in the *Towers' Case* to effect the intention of the testator which was so expressly declared; but proper adherence to the policy of the law in the State, will not allow the extension of the doctrine of the *Towers' Case* beyond the limitations of

Bonaparte *vs.* Balto. Hampden & Lake Roland R. R. Co., *et al*

that decision, nor to a case not falling clearly within its reasons and reasoning; and this case does not.

> *Judgment reversed, and*
> *cause remanded for*
> *a new trial.*

(Decided 4th February, 1892.)