No. 19,737.

NELLIE A. SHERMAN, *Appellee*, v. ERNEST F. HAVENS et al. (ARTHUR B. HAVENS and ELEANOR HAVENS, as Executors, etc., *Appellants*).

### SYLLABUS BY THE COURT.

1. WILL—*"Spendthrift Trust"—May be Created and Enforced in Kansas.* The doctrine of "spendthrift trusts" approved by the majority of the American courts, by which it is settled that it is lawful for a testator or grantor to create a trust estate for the life of the *cestui que trust*, with the provision that the latter shall receive and enjoy the income at times and in amounts either fixed by the instrument or left to the discretion of the trustee, and that such income shall not be subject to alienation by the beneficiary, nor liable for his debts, accords with the general policy which this state has always followed respecting the right of creditors and debtors. It deprives the creditor of no security to which he has the right to look, and it recognizes the right which the owner of property has to dispose of it, either by an absolute gift or by a conditional one, and to make provision for the object of his bounty, provided he gives the use only without the absolute title, and therefore the testator's intention in this respect, when clearly expressed, will be carried out.

2. SAME—*Terms Do Not Create a "Spendthrift Trust"—Intention of Testator.* A will contained the following clause:

"To my brother, Arthur B. Havens, should he survive me, an annuity of one thousand dollars, and I direct my said executor-trustees to pay him Two Hundred and Fifty Dollars quarterly in advance from my death until his; but should he pre-decease me, and in any event after his death, such annuity fund to be added to the trust estate hereinafter created for my said daughter Elizabeth and her issue."

*Held*, that proper construction of the will does not disclose an intention on the part of the testator to secure to his brother the life enjoyment of the income of the trust estate exempt from his brother's creditors.

3. SAME—Without deciding that a letter written by the testator three years after the execution of the will was admissible in evidence for the purpose of showing the circumstances under which the will was executed, it is held that nothing contained in either the will or the letter shows that it was the testator's

Sherman v. Havens.

intention to protect the income from waste or dissipation, or to prevent the legacy from being subject to payment of the brother's debts.

4. TRUST FUND—*In Hands of Executor—Subject to Garnishment by Creditors of Beneficiary after Order of Final Distribution.* Section 228 of the code authorizing creditors to proceed by garnishment against "any person" who shall be indebted to, or have any property, real or personal, in his possession or under his control belonging to the debtor, is sufficiently broad in its terms to authorize an action in garnishment against an executor or administrator after an order of final distribution.

5. SAME—*Trust Fund—In Hands of Executor—Estate Solvent—Fund May be Garnished Before Final Settlement.* It being one of the agreed facts in the present case that the estate of the testator is solvent and able to respond to the quarterly payments due to the beneficiary, and that they have made such payments to him in advance and recognized the provision, no order of distribution was necessary in order to authorize them to make the payments, and such quarterly payments are subject to attachment before final settlement.

6. GARNISHMENT PROCEEDINGS—*Attorney's Fee Proper.* Under section 247 of the code, the allowance by the court of $25 attorney's fee for the plaintiff was proper.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed March 6, 1915. Affirmed.

*L. O. Carter,* of Kansas City, and *Arthur M. Jackson,* of Leavenworth, for the appellants.

*Benjamin F. Endres,* of Leavenworth, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff is a judgment creditor of the defendant, Arthur B. Havens. The executors of the will of Paul E. Havens, brother of the defendant, are garnishees in a proceeding to reach, and apply in payment of plaintiff's judgment, the income of a trust estate bequeathed by the will to the defendant.

Two questions are involved: First, does the will properly construed disclose an intention on the part of the testator to create a "spendthrift trust" in favor of his brother; in other words, to secure to his brother the life enjoyment of the income of the trust estate exempt from the creditors of his brother? Second, if a proper construction of the will discloses such intention, can it be made effectual?

It seems more appropriate to consider the second of these questions first, because, in determining what is essential to the creation of a spendthrift trust, it becomes necessary to refer to the history of the law in relation to such estates.

Paul E. Havens, the testator, was a brother of the defendant and died on the 6th day of May, 1913, leaving a last will dated February 18, 1908, which has been duly probated. The following is the clause of the will upon which the defendant and the garnishees base their contention that it was the testator's intention to create a spendthrift trust:

"To my brother, Arthur B. Havens, should he survive me, an annuity of one thousand dollars, and I direct my said executor-trustees to pay him Two Hundred and Fifty Dollars quarterly in advance from my death until his; but should he pre-decease me, and in any event after his death, such annuity.fund to be added to the trust estate hereinafter created for my said daughter Elizabeth and her issue."

Since the decision in *Brandon v. Robinson*, 18 Ves. 429, 433, the English courts have uniformly followed the rule of the common law, that a donor creating a life estate can not take away its incidents, among which are the powers of voluntary and involuntary alienation. In England, however, as well as in those states where the English rule has been adopted, it is held that if the gift or devise contains a condition of cessor upon the bankruptcy or insolvency of the beneficiary, or upon an attempted alienation, the restraint is valid. (*Brandon*

*v. Robinson,* supra; *McKinster v. Smith,* 27 Conn. 628; *Tillinghast v. Bradford, & another,* 5. R. I. 205; 26 A. & E. Encycl. of L. 138.)

The grounds upon which the English decisions rest are two: First, that the right of alienation is a necessary incident to an equitable estate for life; and second, that it is contrary to public policy that one should have the right to enjoy the income of property to the exclusion of his creditors.

In *Sparhawk v. Cloon,* 125 Mass. 263, the opinion contains an exhaustive discussion of the subject, and it is there stated that from the time of Lord Eldon, the rule has been in the English court of chancery that when the income of a trust estate is given to any person (other than a married woman) for life, the equitable estate for life is alienable by and liable in equity to the debts of the *cestui que trust.*    (p. 266.)

The English rule has been rejected by most of the state courts in this country and by the supreme court of the United States.    (*Nichols, Assignee, v. Eaton et al.,* 91 U. S. 716, 23 L. Ed. 257; *Shankland's Appeal,* 47 Pa. St. 113; *Broadway National Bank v. Adams,* 133 Mass. 170, 43 Am. Rep. 504; *Lampert v. Haydel,* 96 Mo. 439, 446, 9 S. W. 780; *Smith & Son v. Towers, Garnishee,* 69 Md. 77, 14 Atl. 497, 9 Am. St. Rep. 398.)

The rule adopted by the majority of the American courts is that "it is lawful for a testator or grantor to create a trust estate for the life of the *cestui que trust,* with the provision that the latter shall receive and enjoy the avails at times and in amounts either fixed by the instrument or left to the discretion of the trustee, and that such avails shall not be subject to alienation by the beneficiary nor liable for his debts.    (26 A. & E. Encycl. of L. 139.)

The argument upon which the American authorities are based is that a creditor of the donee has no right to look to the property of another man for the payment of his debts.

"As to past debts, such creditors are no worse off after their debtor becomes the donee of a spendthrift trust than they were before, and as to future debts it is their own folly if they choose to rely upon a fund which by the very terms of its donation it is impossible for them to reach, of which fact they are advised actually or constructively by the registry laws of the United States. Moreover, it is not deemed against public policy for a testator to provide a support for a spendthrift child, since it is the interest of the public that such child shall not become a public burden. The rights of creditors are not deemed any more sacred than the right of property involved in the execution of the trust; or the right which a testator has that the will he made should be carried out, and not one that the court makes for him." (26 A. & E. Encycl. of L. 141.)

(See, also, *Nichols, Assignee, v. Eaton et al.,* 91 U. S. 716, 23 L. Ed. 257; *Steib v. Whitehead,* 111 Ill. 247; *Partridge v. Cavender,* 96 Mo. 452, 9 S. W. 785; *Moore's Estate,* 198 Pa. St. 611, 612, 48 Atl. 884.)

In *Nichols, Assignee, v. Eaton et al.,* supra, Mr. Justice Miller said:

"Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives,* who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived." (p. 727.)

It can not be doubted that by the great weight of authority in this country it is settled that the founder of such a trust may secure the enjoyment of it to the objects of his bounty by providing that it shall not be alienable by them or become subject to be taken by their creditors, and that the testator's intention in this

respect when clearly expressed by him will be carried out. (*Rife v. Geyer*, 59 Pa. St. 393; *Broadway National Bank v. Adams*, 133 Mass. 170, 43 Am. Rep. 504; *Sparhawk v. Cloon*, 125 Mass. 263; *Lampert v. Haydel*, 96 Mo. 439, 9 Am. St. Rep. 358; *Smith & Son v. Towers, Garnishee*, 69 Md. 77, 14 Atl. 497, 9 Am. St. Rep. 398; *Nichols, Assignee, v. Eaton et al.*, supra; *Roberts v. Stevens*, 84 Maine, 325, 24 Atl. 873, 17 L. R. A. 266; *Jourolmon v. Massengill*, 86 Tenn. 81, 5 S. W. 719; *Garland v. Garland*, 87 Va. 758, 13 S. E. 478; *Wales' Admr. v. Bowdish's Exr.*, 61 Vt. 23, 27, 17 Atl. 1000, 4 L. R. A. 819; *Seymour v. McAvoy*, 121 Cal. 438, 53 Pac. 946, 41 L. R. A. 544.)

The supreme court of Iowa has approved the American rule, with the qualification that creditors can not deprive the beneficiary of the support provided for him out of such property, "so long as it is in accordance with his station in life." (*Bank v. Crist*, 140 Iowa, 308, 313, 118 N. W. 394, 132 Am. St. Rep. 267.)

The question is a new one in this state. There is no statute or decision upon the subject, but we see no reason why the rule adopted by the majority of the courts of this country should not apply here. As was said by the Massachusetts court in *Broadway National Bank v. Adams*, 133 Mass. 170, 43 Am. Rep. 504:

"We are not able to see that it would violate any principles of sound public policy to permit a testator to give to the object of his bounty such a qualified interest in the income of a trust fund, and thus provide against the improvidence or misfortune of the beneficiary." (p. 173.)

It accords not only with the weight of authority in this country and with sound reasoning, but also with the general policy which the state has always maintained respecting the rights of creditors and debtors as shown in the liberal provisions of our exemption laws. It deprives the creditor of no security to which he had the right to look, and it recognizes the right

which the owner of property has to dispose of it, either by an absolute gift or by a conditional one, and to provide for the object of his bounty, provided he gives the use only without the absolute title.

The first question is perhaps the more difficult one. Does the will properly construed disclose an intention on the part of the testator to secure to his brother the life enjoyment of the income of the trust estate exempt from the creditors of his brother? In *Bennett v. Bennett,* 66 Ill. App. 28, it was said of a spendthrift trust that the " 'provisions against alienation of the trust fund by the voluntary act of the beneficiary, or *in invitum* by his creditors, are the usual incidents of such trusts.' " (p. 37; see, also, 26 A. & E. Encycl. of L. 138.)

There is some conflict in the authorities as to what is essential to the creation of a spendthrift trust. It seems to be clearly established, however, that the intent need not be stated in express terms. (*Baker v. Brown,* 146 Mass. 369, 15 N. E. 783.) In that case the will gave to the daughters of the testator a devise or legacy on condition that they support their father, and it was held that he had no estate under the will which a creditor could reach.

In *Wagner v. Wagner,* 244 Ill. 101, 91 N. E. 66, it was held that it is not necessary to the creation of a spendthrift trust that the *cestui que trust* shall be denominated as spendthrift, or that the testator shall give his reasons for creating a trust, or that the will shall contain all the restrictions and qualifications incident to such trust, but if it appears from the whole will that the testator intended to create a spendthrift trust, that is sufficient.

In *Roberts v. Stevens,* 84 Maine, 325, 24 Atl. 873, the question was whether such a trust was created in favor of the testator's son. The language of the will did not declare in so many words that the son's interest in the trust estate should be beyond the reach of his

creditors, but it was held that such express words were not essential to the creation of such a trust, and that the intention should be gathered from the whole instrument construed in the light of circumstances, and the intention to create a spendthrift trust was inferred in that case from the nature of the provisions annexed to the gift.

On the other hand, where a will created a trust for the benefit of a testator's son, directing the trustee to pay over the income at stated intervals to the *cestui que trust,* or to whomsoever he in writing might designate, it was held not to create a spendthrift trust, because the *cestui que trust* had the right of control of the income while in the hands of the trustee. (*Decker v. Poor Directors,* 120 Pa. St. 272, 13 Atl. 925.)

The trial court admitted in evidence a letter written by the testator to his brother, the defendant, under date of March 6, 1911, the material part of which reads as follows:

"You have reached that age when men ought to evade the worry and labor of business, and my thought is that you should pass the remainder of your days in quiet, and far from business cares. I am glad that I am able to assist you in doing so, and I will freely extend such aid as you require to that end, and your requirements will be responded to as you make them known to me.

"I know that you would do the same for me if conditions were reversed, and so there will be no obligation on your part for whatever you receive from me as long as I live, and provisions have been made in my will, in case you survive me."

It is the contention of the defendant that the will should be construed in connection with this letter, and that the letter itself is proof of the intention of the testator to provide support and maintenance for him, and that it establishes an intention to create a spendthrift trust. The letter was written three years after the execution of the will. Conceding, for the purposes

of the argument, that the letter is admissible to show the circumstances of the testator and his brother, there is no language in either the will or the letter showing that it was the testator's intention to protect the income from waste or dissipation, or to prevent the legacy from being subject to the payment of the brother's debts. In order for us to declare this to have been the intention of the testator, we must look beyond the language of both instruments. The case differs in only one respect from the case of *Girard Life Insurance and Trust Co. v. Chambers,* 46 Pa. St. 485, 86 Am. Dec. 513. There the direction was to pay over the net income " 'unto the *cestui que trust* for his own use and benefit, or to such person as by his order in writing he may authorize to receive the same' " (syl. ¶ 1), and upon his decease to convey the estate so held as he by his last will shall appoint. The question in that case was whether the income for life was subject to the claims of creditors. In the opinion it was said:

"In the present case the income for life could have been secured to the son by provisions against alienation and liability for debts, but this has not been done, and we are reluctantly obliged to defeat the intention of the mother to provide a maintenance for her son, by giving the income during the life of the son to the attaching creditor, who can receive from the trustees only what the son would be entitled to." (p. 492.)

In Underhill on the Law of Wills, it is said:

"The trust provision which is designed to secure the income of a fund against the creditors of the beneficiary, or to prevent him from assigning or pledging it, need not, in this country, be an express direction in terms prohibiting anticipation. The testator is never required to state expressly that income or principal is not to be assignable or transferable, or subject to mortgage or pledge by the legatee; and it would seem from many of the cases that he is not compelled to state that it shall not be liable for the debts of the beneficiary, or that it shall be free from the interference and control of his creditors, in order to create a valid spendthrift trust." (Vol. 1, § 529.)

In the same section, however, the author says:

"Any expression clearly evincing an intention on the part of the testator to protect the income from waste and dissipation, and to secure its application to the support and maintenance of the beneficiary, is sufficient."

It was, of course, within the power of the testator, had he seen fit, to provide that the payments to his brother should be exempt from all claims of creditors of the latter, or should be paid into his hands alone, and not upon any order or assignment of his. While the letter may be said to manifest a desire to provide for the support of the brother during the remaining years of his life, it does not manifest an intention that he should not have the full control and ownership of the payments to use as he might see fit. Neither the will nor the letter, nor both taken together, disclose an intention to prohibit Arthur B. Havens from anticipating the income by assignment or transfer to another, and while there are many authorities which hold that no one of these particular things is essential to the creation of a spendthrift trust, such a trust can be created only by the express language of the instrument itself, or by necessary implication from such language. The courts have no power to create such a trust or to make a will for the testator.

In *Sears v. Choate,* 146 Mass. 395, 15 N. E. 786, 4 Am. St. Rep. 320, it was declared that in order to give such a qualified estate "the language of the founder must be clear and unequivocal to that effect." The court held that the will in that case did not create such a trust. It differed from the one in the case at bar in only one respect; it contained no limitation over of the estate in any contingency to any other person. In the opinion it was said:

"There is no discretion given to the trustees, and there is no provision that the income or the estate shall not be alienable by the plaintiff or attachable by his creditors." (p. 397.)

It is true in the present case there is a gift over of the estate to the daughter of the testator, but the trustees are given no discretion as to the amount they shall pay to the defendant, nor is there any provision that the income of the estate shall not be alienable by the brother, nor any provision that it shall not be liable for his debts. It will be found that in most of the instances where the rule has been declared that the intention to create such a trust need not be stated in express terms, there was language showing an intention that the fund, or the income from it, should be enjoyed for the support and maintenance of the beneficiary during his life or for a period of years. (*Wagner v. Wagner,* 244 Ill. 101, 91 N. E. 66; *Stambaugh's Estate,* 135 Pa. St. 585, 19 Atl. 1058.) The Pennsylvania court held that the intention of the testator to create a spendthrift trust might be ascertained from the will in the light of proof that the *cestui que trust* became insolvent a few months before the writing of the will, and that this intent should not be set aside because not clearly expressed by the scrivener, at least as between the trustee and the *cestui que trust.* The rights of creditors of the *cestui que trust* were not involved.

The case of *Pickens v. Dorris,* 20 Mo. App. 1, is directly in point. There the court, after approving the rule adopted by the majority of the American courts, as well supported by reason and the weight of authority, held that the testator's intention to withdraw his gift from the creditors of the devisee will not be presumed from surrounding circumstances of which the creditor has not record notice, where such intention is not expressed in or necessarily implied from the terms of the instrument creating the trust. In the opinion it was said:

"In this case, however, we are asked to go further, and are asked to declare that where the surrounding circumstances of a trust, of which circumstance no record notice is brought home to the creditor, are such

as lead to the inference that it was the intention of the devisor to withdraw his gift from the claim of the devisee's creditors, we shall give effect to such intention, although not expressed in the instrument itself nor necessarily implied from anything expressed therein. This we must decline to do. The will of George P. Dorris does not expressly exempt the property devised for the benefit of his son, Thomas, from the claims of the latter's creditors. There is nothing in the will itself which would indicate that the trust thus created was in the nature of a spendthrift trust; and to seek in the surrounding circumstances a reason for declaring it to be such, the authorities do not warrant and a sound policy forbids." (p. 5.)

In the case at bar it seems certain from the language of the will that the income was and is assignable by the defendant, to whom it was made payable. There is no provision to the contrary, nor words which intimate an intention of the testator that the income should not be assignable. Of course, if it be assignable, it is because it belongs, when due, to the defendant; and if it belongs to him, it is liable for his debts. To construe the will otherwise would compel us to say that in all cases where the income of a fund is given to another for life, it is neither capable of assignment nor liable for the debts of the annuitant. The supreme court of Maryland had under consideration the same question in *Baker v. Keiser*, 75 Md. 332, 23 Atl. 735. In the opinion the court used this language:

"Without *importing* words into that will which are not there, and imputing an intention to the testator of which he has given no intimation by any verbal expression, we can not say that the income was not and is not assignable by the life tenant; and if it is, there was error in holding it to be beyond the reach of creditors. Any other construction of this will and ruling in this case would be in effect saying that all life estates of like character, given in trust, are incapable of being alienated. This court went as far as they could in the *Towers' Case*, 69 Md. 77, 14 Atl. 497, to effect the intention of the testator which was so expressly declared; but proper adherence to the policy of the law in

the state will not allow the extension of the doctrine of the *Towers' Case* beyond the limitations of that decision, nor to a case not falling clearly within its reasons and reasoning; and this case does not." (p. 339.)

The action here was brought under section 228 of the code, which provides:

"Any creditor shall be entitled to proceed by garnishment in the district court of the proper county against any person, excepting a municipal corporation, who shall be indebted to or have any property, real or personal, in his possession or under his control belonging to such creditor's debtor, in the cases, upon the conditions, and in the manner hereinafter described."

In *Nelson v. Stull,* 65 Kan. 585, 68 Pac. 617, 70 Pac. 590, it was held that an executor is not subject to garnishment under this section of the code before a final order of distribution. The court declined at that time to decide whether he would be subject to garnishment after such final order. The defendant makes the broad contention that an executor or administrator can not be subject to garnishment in the absence of a special statute; and further, that under the decision just cited the executors are not liable to garnishment, because no order of distribution has been made. The code provision, *supra,* is broad enough in its terms to include executors and administrators after an order of distribution has been made. (*Hardesty v. Campbell, Adm'r and Garn.,* 29 Md. 533; *Baker v. Keiser,* supra; *Arbaugh v. Myers,* 8 Ohio Dec. Repr. 617; 20 Cyc. 1028.)

The will expressly directs the executor-trustees to make the quarterly payments to Arthur B. Havens in advance; and it is conceded that they have recognized this provision and have made the payments accordingly. No order of distribution was necessary in order to authorize the executors to make the payments. The rule exempting executors and administrators from

garnishment process before the final order of distribution rests upon the assumption that it can not be known until the estate is settled and the order made whether there will be any assets sufficient to pay debts and expenses of administration.   The reason for the rule in the Stull case, *supra,* being absent, the rule fails.   It is one of the agreed facts in the present case that the estate of Paul E. Havens is solvent and able to respond to these quarterly payments due to Arthur B. Havens, without jeopardizing the rights of any creditor of the testator.   In *Lorenz's Administrator v. King,* 38 Pa. St. 93, it was held that a legacy or distributive share is subject to attachment before final settlement where assets are admitted by the representative, and where there are ample funds in his hands to pay a legacy after the discharge of all debts against the estate.   An income for life from a trust estate is the absolute property of the beneficiary, and is therefore subject to garnishment by his creditors. (*Girard Life Insurance and Trust Co. v. Chambers,* 46 Pa. St. 485, 86 Am. Dec. 513; *J. Knefler v. C. U. Shreve,* 78 Ky. 297; *Pickens v. Dorris,* 20 Mo. App. 1; *Baker v. Keiser,* 75 Md. 332, 23 Atl. 735; 20 Cyc. 993, Note; 14 A. &. E. Encycl. of L. 763, Note.)

Section 247 of the code provides for the allowance of an attorney's fee to the extent of $25 as costs of the plaintiff in garnishment proceedings, and the court properly allowed that sum as fees in the present case.

It follows that the judgment will be affirmed.