Lulu May JOHNSON, Appellant,

v.

Carl A. MORAWITZ, and R. W. Kurtze, Trustees of the Trust Estate of Orlando Jolliffe, a/k/a O. Jolliffe, deceased; and Irving Jewell, Appellees.

No. 6630.

United States Court of Appeals
Tenth Circuit.

July 5, 1961.

Rehearing Denied Aug. 2, 1961.

James W. Sargent and J. Francis Hesse (of Jochems, Sargent & Blaes), Wichita, Kan., for appellant.

Richard Jones and Robert J. Roth, Wichita, Kan. (A. W. Hershberger, Wm. P. Thompson, H. E. Jones, Jerome E. Jones and William R. Smith, Wichita, Kan., on the brief), for appellee Jewell.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

Orlando Jolliffe died on May 20, 1945, leaving no direct lineal descendants. His sole heirs were nephews and nieces. By the terms of his will, his property, with the exception of some specific bequests, was placed in a trust for a period of ten years, and 111 beneficial shares were created in the trust. Distribution of income and principal was based upon the number of shares each beneficiary was to receive. The will provided that all bequests to any beneficiary were to be paid

"in person and to no one else and, for the life of this trust, shall not be assignable or *transferrable,* nor subject nor liable in any way whatever for any debt or obligation of any kind of the said beneficiary or distributee heretofore or hereafter contracted or incurred or created and the personal receipt of the distributee or beneficiary shall be obtained by said trustees of said O. Jolliffe Estate Trust and the executors of my last will and testament and said property or funds shall not be subject to a creditor's bill, execution, attachment or garnishment by any creditors of any of the beneficiaries * * *."

After the death of Orlando Jolliffe, a large number of his relatives came to Newton, Kansas for his funeral and to determine what disposition he had made

of his property. Immediately after the burial of the deceased, they assembled in the office of an attorney to hear the reading of the last will and testament. The plaintiff, Lulu May Johnson, was present and learned that she was not mentioned in the will. There is evidence that she became emotional, and caused a scene. She declared to her brother, Irving Jewell, the defendant herein, that she did not think it was fair that he and another brother were left a portion of the estate while she was left out. (The defendant Jewell was a nephew of the deceased, and the will provided that he should receive 12 shares of the trust.) She testified that the defendant thought momentarily, and said, "Alright, I will give you three shares", which was one-fourth of his interest. Plaintiff and her brother, Jewell, then withdrew to an adjoining room where an attorney, in longhand, prepared a purported assignment, and Jewell signed it.[1] Upon her return to her home in Wisconsin, she requested another brother to make a similar assignment to her of a portion of his interest in the trust, but he refused.

Thereafter, following each regular distribution of income by the trustee, Jewell paid to his sister a portion of the amount distributed to him. Only the first was an exact one-fourth of the defendant's share. Jewell included the full amount of these distributions in his income tax returns and paid the tax thereon, and that portion received by the plaintiff was not reported by her as income for any year.

Alleging that Irving Jewell had assigned to her three of his shares in the estate property, the plaintiff brought this action seeking a judgment declaring her to be the owner of three shares of the trust, to recover money which she alleged was received by Jewell from the interest he had assigned to her, and to impress a trust upon the remaining interest of Jewell in the trust estate.[2] The trial court held that the will created a spendthrift trust which was not subject to alienation by a beneficiary, and that the instrument purporting to assign three of Jewell's shares was void and unenforceable. The plaintiff contends, on appeal, (1) that the assignment settled a family controversy which should be recognized; (2) that as a result of the execution of this instrument, she did not contest the will; (3) that, having recognized and made payments under the terms of the instrument for a period of eleven years, he may not now raise the issue of invalidity and lack of consideration; and (4) that such contracts are void ab initio only when there is no consideration, and it is apparent that there was no dispute between the parties.

The plaintiff concedes that under Kansas law the will created what is generally termed a "spendthrift trust." Everitt v. Haskins, 102 Kan. 546, 171 P. 632; Pond v. Harrison, 96 Kan. 542, 152 P. 655, L.R.A.1916B, 1264; Sherman v. Havens, 94 Kan. 654, 146 P. 1030. The rule is well settled that an attempt to alienate the interest of a beneficiary of a spendthrift trust is void and unenforceable, and need not be recognized by a trustee. 90 C.J.S. Trusts § 193(b); 1A Bogert, Trusts and Trustees § 227 (1951). In Sherman v. Havens, 94 Kan. 654, 146 P. 1030, 1031, it was said:

"The rule adopted by the majority of the American courts is that: 'It is lawful for a testator or grantor

1. This instrument reads as follows:

"Newton, Kans.
"May 23, 1946

"The undersigned, Irvin Jewell ~~and Orlando~~ for a good and valuable consideration and love and affection do hereby transfer, set over and agree to pay and deliver to my sister, Lula May Johnson, three shares or ¼ of my distributive share and portion of the estate of O. Jolliffe, deceased, as devised and bequeathed to me by his last will and testament.

"Irving Jewell
"Witness:
"John P. Flinn
"Attorney."

2. This action was brought after the expiration of the testamentary trust, but the beneficiaries had, by agreement, extended the trust administration for a period of 5 years.

to create a trust estate for the life of the cestui que trust, with the provision that the latter shall receive and enjoy the avails at times and in amounts either fixed by the instrument or left to the discretion of the trustee, and that such avails, shall not be subject to alienation by the beneficiary nor liable for his debts.'
* * *

"It cannot be doubted that by the great weight of authority in this country it is settled that the founder of such a trust may secure the enjoyment of it to the objects of his bounty by providing that it shall not be alienable by them or become subject to be taken by their creditors, and that the testator's intention in this respect, when clearly expressed by him, will be carried out."

Furthermore, Kansas has adopted a statute which, in effect, provides for spendthrift trust treatment so far as the voluntary assignment of the receipts of rents and profits of lands included in a trust are concerned. Gen.Stat.Kan.1949, § 67–404. In Koelliker v. Denkinger, 148 Kan. 503, 83 P.2d 703, 707, 119 A.L.R. 1, the Kansas Supreme Court referred to this statutory provision, and said:

"Under this statute the beneficiary of a trust for the receipt of the rents and profits of lands cannot dispose of such interest unless authorized by the instrument creating the trust. Any assignment of [sic] transfer by Cora E. Koelliker of any interest she may have in the rents and profits of the land would be void."

■ The doctrine of spendthrift trusts rests upon the right of a donor to give his property to another upon such conditions and restrictions against alienation as he shall see fit. As the property does not belong to the donee prior to the creation of the trust, and after the creation of the trust the donee's interest is subject to the conditions attached by the donor, creditors or transferees of the donee have no right to rely upon it for the satisfaction of their claims. In re Watts, 160 Kan. 377, 162 P.2d 82; Sherman v. Havens, supra; Anno., 34 A.L.R. 2d 1335 (1954).

■ It is true that the law looks with favor upon a compromise and settlement between members of a family of a bona fide dispute concerning the settlement of an estate, and the termination of such a dispute is generally considered sufficient consideration to support the settlement. In re Noble's Estate, 141 Kan. 432, 41 P.2d 1021, 97 A.L.R. 463; Snuffer v. Westbrook, 134 Kan. 793, 8 P.2d 950; Bottom v. Harris, 108 Kan. 7, 193 P. 1058; Schnack v. City of Larned, 106 Kan. 177, 186 P. 1012; Riffe v. Walton, 105 Kan. 227, 182 P. 640, 6 A.L.R. 549. The plaintiff seeks to apply this general rule to a case in which the testator, by clear and specific language, prohibited the assignment or transfer of any part of the trust funds. The case of Brent v. McDonald, 180 Kan. 142, 300 P.2d 396, 405, upholds a family agreement for the division of property in an estate, but states:

"However, such agreements will not be given effect to defeat a trust or specific restriction placed upon the property in the will, Myers v. Noble, supra. [141 Kan. 432, 41 P. 2d 1021, 97 A.L.R. 463.]"

We do not hold that the probate court could not approve a final settlement of a real dispute which was designed to protect a spendthrift trust; [3] such a situa-

3. In Brent v. McDonald, 180 Kan. 142, 300 P.2d 396, 406, the Kansas Supreme Court said:
"Appellant was a party to the agreement and had notice of the final settlement. At no time did she assert title as the successor to Pearl Brent's interest. Had she asserted the right she now asserts when the agreement was executed and final settlement made this controversy would not have arisen. If she intended to claim Pearl Brent's interest pursuant to the quitclaim deed she could have produced it in the probate court and asked that court to assign such interest to her. But, she remained silent. She

tion is not present here. This assignment was never presented to the probate court for allowance.

There is a total lack of evidence that a dispute existed between this brother and sister over his share of the estate or her right to participate in the estate. It may be that her disappointment in being left out of her uncle's estate was justified, and no doubt her manner of expressing this disappointment at the meeting embarrassed her brother Irving. There is, however, no evidence that at the time she thought there was any basis to support a contest of the will, or that she intended to contest it. Apparently her brother felt that she should have been included as a devisee, and saw fit to appease her by executing the purported assignment and sending her sums of money throughout the life of the trust. The instrument itself contains no indication that it was executed in compromise or settlement of a dispute between the parties relating to the estate, and it did not provide that the plaintiff should refrain from doing anything.

In construing a will, the primary consideration is to determine the intention of the testator. In re Watts, supra. When it is clear that the testator intended to create a spendthrift trust the courts will not permit a beneficiary to dispose of the trust property or any part thereof in contravention of the terms of the will. Everitt v. Haskins, supra.[4] The purported assignment by the defendant to the plaintiff was directly contrary to the provisions of the will and was, we think, under Kansas law, void ab initio.

This record does not disclose that the plaintiff gave up any existing right for the assignment, or that it was intended that she should refrain from doing any act concerning the probate of the will. Her testimony was to the effect that she did not consider the contract as one which would prevent her from maintaining a will contest action. She acknowledged that, subsequent to the assignment, she considered attacking the will, but for other reasons decided not to. The defendant received no benefit whatever from the instrument. There is no showing that the plaintiff's rights were prejudiced in any manner by the execution of the assignment. Under these facts, the doctrine of estoppel or ratification has no application. 3 Pomeroy, Equity Jurisprudence § 812 (5th Ed., 1941); 1 Williston on Contracts § 139 (Rev.Ed.1936). See Broadview Oil Co. v. Livengood, 156 Kan. 514, 134 P.2d 378; Dent v. Smith, 76 Kan. 381, 92 P. 307.

Affirmed.

---

may not now assert rights contrary to the decree of final settlement when she stood by and did not then assert the claim she is now making, Erwin v. Erwin, supra [153 Kan. 703, 113 P.2d 349]; Down v. Austenfeld, 162 Kan. 562, 565, 178 P.2d 201; In re Estate of Welch, 167 Kan. 97, 204 P.2d 714. The failure to assert a claim in a family settlement to certain property, which is left in the possession of other heirs, may act as a relinquishment to the right, title and interest in such property, 26 C.J.S., Descent and Distribution, § 73, p. 1112. It necessarily follows that if appellant was then claiming to be the successor to Pearl Brent's interest she should have pursued the remedy available to her by appealing from the decree of final settlement. Since no appeal was made the decree became final and is binding upon her."

4. In Everitt v. Haskins, 171 P. 632, 633, it was said:

"The will directs that payments shall be made to him. If he can assign or transfer his right to the payments before they are made, or before they are due, he can entirely defeat the will so far as provision therein made for his benefit is concerned."