**In re Frank Bohumil PECHANEC, Mary Ann Pechanec, Debtors.**

**FARMERS COOPERATIVE COMPANY OF RUSH CENTER, KANSAS, Plaintiff,**

**Lynn D. Allison, Trustee, Third Party Plaintiff,**

v.

**TIMKEN STATE BANK, B.F. Pechanec Trust, Frank Pechanec, as Trustee of the B.F. Pechanec Trust, Lynn D. Allison, Trustee, Defendants.**

**Bankruptcy No. 84–11520.
Adv. No. 85–0221.**

United States Bankruptcy Court, D. Kansas.

April 22, 1986.

James T. McIntyre, Wichita, Kan., for plaintiff.

Lynn D. Allison, Wichita, Kan., Trustee, pro se.

Marvin R. Appling, Wichita, Kan., for debtors.

Dale E. Pike, Great Bend, Kan., for Timken State Bank.

## MEMORANDUM OF DECISION

ROBERT B. MORTON, Bankruptcy Judge.

### NATURE OF THE CASE

The instant adversary comes before the Court upon the complaint of the Trustee and Farmers Cooperative Company of Rush Center, Kansas, to have the debtors' interest in a trust determined to be an asset of the estate and to set aside a mortgage on the trust property.

### FACTS

The Court finds the material facts to be as follows:

On April 8, 1981, B.F. Pechanec died, leaving a will in which he set up a testa-

mentary trust naming his four children as beneficiaries. One of the children mentioned was Frank Pechanec, one of the debtors herein. The corpus of the trust was made up of five parcels of real estate, certain stock, and a sum of money in a checking account at the Timken State Bank.

The testator named Dan Reha, Frank Pechanec and The Security State Bank of Great Bend, Kansas, as trustees of the trust, all of whom accepted the trusteeship and were issued Letters of Appointment by the District Court of Rush County, Kansas, on July 18, 1983. Debtor Frank Bohumil Pechanec was also named as executor of the will. The Journal Entry of Final Settlement of the probated estate was filed March 15, 1983.

On July 22, 1982, Frank Pechanec and his wife (debtors) purportedly gave to the Timken State Bank a mortgage in the five quarter sections of real estate that constitute a major part of the trust estate corpus in exchange for the sum of $150,000. The mortgage recites that the debtors "covenant and agree that ... they are the lawful owners of the premises above granted...." The mortgage is signed by the debtors individually and is notarized by Dan Reha who was at that time the president of the Timken State Bank.

In his will the testator set out in detail (twenty-two pages) how the trust was to be administered and the powers of the trustees. The Court identifies those provisions important to the issues herein as follows:

The trustees shall pay or distribute to or apply for the benefit of any one or more of a group consisting of the beneficiaries for whom such separate share is designated and the issue of every degree of such beneficiary, such amount or amounts of the net income and principal of such separate share as the trustees, in their absolute discretion, may determine at any time and from time to time, and the trustees shall have the absolute discretion, at any time and from time to time, to make unequal payments or distributions to or among any one or more

of said group, and to exclude any one or more of them from any such payment or distribution.

(Paragraph Third, page 3.)

\* \* \* \* \* \*

C. I recognize and have deliberately designed this trust to provide for great authority to be given and executed by my Trustees. I do this with confidence and knowledge of their fairness and ability to administrate my intent within the provisions of this Trust Agreement. Though not mandatory, I hereby set forth my desire that I expect this trust to accomplish:

(1) I hope and intend that my son, Frank B. Pechanec will receive my farm property and that my other children will share equally in the value of my estate at my death.

(2) That my daughters, Mary Ann Urban, Rosemary Dome and Helen Finger, will have these properties given unto them within this trust for their protection and security separate and apart from their marriages and relationships with other persons; to provide security apart from their being financially dependent on others.

(3) That in the event any of my children do not need or desire their share of my estate, that the same may be passed on to my grandchildren for the protection and benefit of said grandchildren and their issue.

(4) It is my desire and intent that the Trustees shall exercise their discretion over this trust so that my children and grandchildren will be assured adequately not only their basic expenses of support, maintenance in health, and general welfare, but that they shall have sufficient means for recreation, travel, and for some psychic satisfactions as would generally contribute to their well-being and comfort. The continued financial welfare of my children is my primary concern, and to that I hope and intend that the Trustees will given them every consideration and administer this trust accordingly.

(5) The Trustees are authorized to make distribution from time to time of appropriate and reasonable amounts of the principle [sic] of this trust as "sentimental" gifts to only one or more of the beneficiaries eligible to receive the income therefrom, to acknowledge significant events or joyous occasions, such as graduations, anniversaries, appropriate holidays, respective birthdays, engagements, and weddings and conspicuous scholastic achievements. Such gifts are of the demonstrative, "remembrance" type we usually make in our daily lives to recognize special occasions.

(6) It is my basic intention and philosphy [sic] that the principle of fairness and equity shall be applied by the Trustees as nearly as practicable in making such payments, and that I intend no preference or favortism [sic] of any kind. The Trustees shall have the authority and discretion to make such distributions in unequal amounts to said beneficiaries, if the Trustees deem it advisable after taking into account the variations in health, character, personalities, sharp differences in independent income and capital resources, tax status, education, other special needs, background circumstances generally, and merit of the respective beneficiaries. In human affairs, it is not possible to accord mathematically exact and equal treatment to each and every one of my children and their family units.

(7) I realize that situations for various reasons, circumstances, and changes not now foreseeable or cannot be anticipated, may occur in economic position of one or more of the beneficiaries, possibly resulting in wide disparity in their relative future financial needs, whereupon one or more of them will deserve or reasonably require a greater portion of the net income and/or principal of this trust. Accordingly, the Trustees may make such distinction between said beneficiaries as they deem appropriate.

It is my desire that at the termination of this trust that my child, Frank B. Pechanec, who is actively engaged in my agricultural operation shall have from the trust, in fee simple absolute, the entirety of my farm, cattle, land and agricultural interest, or the entirety of any stock interest representing such agricultural interests, and that my remaining children shall have an equal amount of the value of the said trust. I therefore direct the aforementioned trustees to effectuate the distribution and termination of the corpus of this trust in such manner as to see that this desire is effectuated so long as the trustees in their sole and absolute discretion as they may determine at any time and from time to time this said paragraph is in the best interest of the beneficiaries of this trust. In the event that my trustees find in their sole and absolute discretion as they may determine at any time and from time to time that this paragraph no longer serves the best interest of the beneficiaries of this trust they may then declare its provisions ineffective and disregard its provisions.

(Paragraph Third, pages 5–7.)

SIXTH: In extension and not in limitation of the powers given by law or other provisions of this will, the trustees shall have the following powers with respect to this trust and its property, in each case to be exercised from time to time, in the absolute discretion of the trustees without order or license of any Court, and without the consent of any of the beneficiaries hereunder:

A. To commingle the assets of the separate shares created hereunder solely for purposes of convenience in investments and administration thereof, and to render one accounting each year for all of the separate shares created hereunder, provided that each such accounting shall show the respective interest of each such separate share, and the respective amount of

income allocable to each such separate share for income tax purposes....

(Paragraph Sixth, page 10.)

C. To guarantee the payment of any loan to or other obligation of any corporation, partnership, association, organization, firm, estate or trust, in which any of the separate shares created hereunder or any of the beneficiaries thereof has an interest, and to pledge, mortgage or otherwise encumber the assets of this trust to secure the payment of any such loans or obligations.

\*    \*    \*    \*    \*    \*

E. To pay the whole or any part of the income or principal of any of the separate shares created hereunder to any minor beneficiary or any other beneficiary incapacitated through age, illness or other cause, with such payment to be made direct to such beneficiary or applied by the trustees, in their discretion, for the education, care, comfort, support, welfare or other benefit of such beneficiaries. Any such application may be made at such time and in such manner as the trustees deem advisable, by direct payment to the legal, natural or other guardian or near relative or friend of such beneficiary, and in each case, the receipt of such beneficiary, guardian, near relative or friend to whom payment is made, shall be a complete discharge of the trustees in respect thereof, and no receipt shall be required for expenses of such beneficiary paid directly by the trustees.

\*    \*    \*    \*    \*    \*

H. To sell, lease, exchange, or otherwise dispose of, any of the assets of the trust estate to any one or more of the trustees, and to loan money to any one or more of the trustees, upon such terms and conditions as the trustees may determine; provided that the trustee or trustees so dealing with the trust estate shall have no power to participate in or make any such determination and the remaining trustee or

trustees shall have the sole power to authorize any such sale, loan, etc., and the determination of such remaining trustee or trustees shall be final and conclusive upon all concerned.

(Paragraph Sixth, pages 11–13.)

While any beneficiary of this trust or of any of the separate shares created hereunder is acting as a trustee hereunder, the other trustee or trustees shall have the sole power to determine whether any discretionary payment or distribution of property from this trust or such separate share shall be made to such beneficiary, and such beneficiary shall have no power to make or participate in any such determination, nor shall any trustee have the power to determine whether any discretionary payment or distribution of property shall be made to a beneficiary whom such trustee is obligated to support or maintain, and the other trustee or trustees shall have the sole power to make or participate in any such determination.

\*    \*    \*    \*    \*    \*

Successor trustees shall be selected by the majority vote of the adult beneficiaries of the trust as soon as possible after a vacancy exists, but, during the existence of any such vacancy, the trustee or trustees then acting hereunder shall act and bind the trust estate by his or their acts pending the filling of such vacancy.

References in this will to "fiduciaries" mean the Executor, Executrix and trustees hereunder.

(Paragraph Eighth, pages 14–16.)

\*    \*    \*    \*    \*    \*

NINTH: In extension and not in limitation of the powers given by law or other provisions of this will, my executor shall have the following powers with respect to the settlement of my estate and my trustees shall have the following powers with respect to the trusts and their properties, in each case to be exercised from time to time at the discretion of my exec-

utor and my trustees and without order or license of Court:

\* \* \* \* \* \*

14. To borrow such amount or amounts of money, for any reason, as my fiduciaries may deem advisable, and as security therefor, to mortgage, pledge or otherwise encumber any property forming a part of my estate or the trusts created hereunder, upon such terms as they deem advisable.

(Paragraph Ninth, pages 116, 21.)

On December 8, 1983, the Security State Bank resigned as corporate testamentary trustee. On September 24, 1984, the debtors filed their petition herein for relief pursuant to Chapter 7 of the Bankruptcy Code. On February 4, 1985, Dan Reha resigned as testamentary trustee leaving the debtor Frank Pechanec as the only active fiduciary. It does not appear that any successor trustees have been elected by the beneficiaries or appointed by the Rush County, Kansas, District Court.

## ISSUES

1. Whether the B.F. Pechanec Trust qualifies under section 541(c)(2) as a trust which restricts the transfer of the beneficial interest of the debtor that is enforceable under non-bankruptcy law and thus excepted from the debtors' estate.

2. If not, whether the mortgage given by debtors on the trust real property is void.

## MEMORANDUM

The bankruptcy estate generally includes all the debtor's legal or equitable interest in property. An explicit exception, however, is contained in 11 U.S.C. § 541(c)(2), which provides that:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bank-

ruptcy law is enforceable in a case under this title.

An examination of the legislative history of section 541(c)(2) indicates that Congress meant to exclude from the estate those "spendthrift trusts" traditionally beyond the reach of creditors under State trust law. *See* H.R. 95–595, 95th Cong., 1st Sess., 176, 368 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6136, 6137, 6323, 6324.

A resolution of the primary issue before the Court turns on whether the trust created for the debtor qualifies as a "spendthrift trust." If so, the debtor's interest in the trust is immune from creditors' claims.[1] If no spendthrift trust is created, the debtor's interest in the undistributed trust corpus is property of the bankruptcy estate. Whether or not the trust qualifies as section 541(c)(2) exception is to be determined by the to state law of Kansas.

Spendthrift trusts have long been held to be valid under Kansas law. *Sherman v. Havens,* 94 Kan. 654, 146 P. 1030 (1915); *Watts v. McKay,* 160 Kan. 377, 162 P.2d 82 (1945).

Generally a true spendthrift trust has been held to be a trust that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust. *See* 76 AM.JUR.2d, Trusts § 148 at 389. In a broader sense the term spendthrift trust is commonly used to denominate a trust created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity. *Id.*

Kansas case law has specifically recognized the difference between a true spendthrift trust and other protective type trusts. In *Watts v. McKay, supra,* the Court noted:

If by the terms of a trust it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income

---

1. However, if the debtor has received any disbursements from the trust income or from the corpus within 180 days after the filing of the petition, such disbursements are included in the estate despite the protection afforded to the un-

distributed portion of the trust. *See In re Hecht,* 54 B.R. 379, 3 Bankr.L.Rep. (CCH) ¶ 70,821 (Bankr.S.D.N.Y.1985); *In re Hersch,* 57 B.R. 667, 13 B.C.D. 1358 (Bankr.E.D.Va. (1986).

and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply, a transferee or creditor of the beneficiary cannot compel the trustee to pay any part of the income or principal.... *A trust containing such a provision as is stated in this section is a 'discretionary trust' and is to be distinguished from a spendthrift trust, and from a trust for support.* In a discretionary trust it is the nature of the beneficiary's interest rather than a provision forbidding alienation which prevents the transfer of the beneficiary's interest. The rule stated in this Section is not dependent upon a prohibition of alienation by the settlor; but the transferee or creditor cannot compel the trustee to pay anything to him because the beneficiary could not compel payment to himself or application for his own benefit. (Italics supplied.)

*Id.* at 384, 162 P.2d 82, quoting from Restatement, Trusts, § 155.

Thus technically the B.F. Pechanec trust is not a spendthrift trust because it nowhere restricts the right of the beneficiaries to assign their interest in the trust. It is more properly termed a "discretionary" trust. The discretion given to the trustees is amply noted throughout the will; the testator's intention to create a pure discretionary trust is clear and it seems equally clear that such is the legal effect of the trust instrument.

As the Court in *Watts* recognized, the alienation of the beneficiary's interest is just as effectively restricted by the very nature of a discretionary trust as by the express provisions in a true spendthrift trust, *supra.* The Court in *Watts* also quoted from 1 SCOTT ON TRUSTS at 774, as follows:

Where by the terms of the trust a beneficiary is entitled only to so much of the income or principal as the trustee in his uncontrolled discretion shall see fit to give him, he cannot compel the trustee to pay to him or to apply for his use any part of the trust property. In such a case, an assignee of the interest of the beneficiary cannot compel the trustee to pay any part of the trust property, nor can creditors of the beneficiary reach any part of the trust property. This is true even in jurisdictions where spendthrift trusts are not permitted. *If the beneficiary himself cannot compel the trustee to pay over any part of the trust fund, his assignee and his creditors are in no better position. It is the character of the beneficiary's interest, rather than the settlor's intention to improve a restraint on its alienation, which prevents its being reached.* (Italics supplied.)

*Id.* The Court in *Watts* then held that the creditor (the beneficiary's ex-wife) could not reach the trust estate to satisfy her judgment for alimony and attorney's fees. Thus in Kansas the effect of finding a "discretionary" trust is the same as the effect of finding a "spendthrift" trust.

Although the legislative history of section 541(c)(2) specifically mentions "spendthrift" trusts, nowhere in the statute itself is the term used. Therefore since under Kansas law both a discretionary trust and a spendthrift trust operate to restrict the transfer of a beneficial interest, either restriction is enforceable in the instant case.

Further, such determination so made herein is in accordance with and in all likelihood is required by *In re Threewitt,* 24 B.R. 927 (Dist.Ct.Kan.1982) (Kelly, J.). In *Threewitt,* Judge Kelly held that the debtor's pension plan which qualified under the Employee Retirement Income Security Act of 1974 was excluded from the estate by virtue of 11 U.S.C. § 541(c)(2). In so holding Judge Kelly stated:

This Court believes, however, that the Bankruptcy Court gave Section 541(c)(2) an unnecessarily narrow construction. Since Congress did not choose to use the term "spendthrift trust" in the language of the section itself, there is no reason to suppose that when the term appears in the legislative history it should be taken as a term of art; it is more reasonable to suppose that the term should be given its ordinary, more general meaning as "in-

clusive of all trusts which bar creditors from reaching a beneficiary's interest;" 76 Am.Jur.2d Trusts § 148, at 389. In the case *sub judice* the relevant question is not whether the Plan looks like a good, old-fashioned spendthrift trust; the relevant question is whether Mr. Threewitt's interest in the Plan would be protected from creditors in an ordinary state court action in which nonbankruptcy law would apply. Under the plain and simple language of Section 541(c)(2), if the ERISA anti-alienation provisions are enforceable against general creditors, they are enforceable against the bankruptcy trustee. *Id.* at 929. As noted above, the Kansas Supreme Court has specifically held in *Watts* that a beneficiary's interest in a discretionary trust "would be protected from creditors in an ordinary state court action." Therefore the discretionary trust at issue herein, enforceable against general creditors, is enforceable against the bankruptcy trustee.

The precatory language found in paragraph Third, expressing the testator's wish that certain of the trust property be given to debtor in fee simple absolute cannot be read to create a "special interest" in the debtor. That manner of interpretation is overriden by the broad powers conferred on the trustee which grant them absolute discretion to determine if a conveyance should be made. The Trust instrument must be considered as a whole. *See Jennings v. Murdock*, 220 Kan. 182, 209, 553 P.2d 846 (1976).

While any disbursement by debtor as trustee to himself as beneficiary may constitute a breach of trust under paragraphs Sixth and Eighth of the will, *supra*, that possibility does not serve to invalidate or terminate the trust itself. *See generally* 76 AM.JUR.2d, *Trusts* § 85 at 332 (1975). Conflicts of interest are within the responsibilities of the Rush County, Kansas, District Court whose jurisdiction over the trust continues.

In sum the Court holds that the B.F. Pechanec Trust is a discretionary trust restricting the transfer of debtor's beneficial interest in the trust property; that such restriction is enforceable under applicable non-bankruptcy law and consequently is enforceable against the trustee of debtor's estate.

Thus as the Penchanec Trust is not property of the debtor's estate the Court does not reach the second issue of whether the mortgage was in violation of the Pechanec trustees' fiduciary duties and therefore void.

A separate judgment giving effect to the determinations made herein will be entered.

The foregoing memorandum constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.