No. 22,344.

MINNIE BOTTOM, *Appellee,* v. OWEN HARRIS, *Appellant.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Demurrer to Evidence Properly Overruled.* The demurrer to the evidence of the plaintiff was properly overruled.

2. SAME—*Note—Given in Settlement of Family Controversy—Good Consideration.* A note given in settlement of a controversy arising between brothers and sisters over the will of their father, all of whom are beneficiaries thereunder, but one of whom is threatening to contest the will, is upon sufficient consideration.

3. SAME—*Compromise and Settlement—Ratification by Interested Party.* A sister who was not present at the settlement and who did not participate therein, but to whom a note was given, by accepting it and suing to recover upon it ratified the settlement, and the maker cannot avoid paying the note for the reason that the sister did not take part in the settlement.

4. COMPROMISE AND SETTLEMENT—*No Mutual Mistake Shown.* In such a settlement, where the brothers arrive at a basis of agreement, and two of those to whom land had been devised fix a valuation on that land and on the land devised to a third brother, who knew the value of all the land, and who thereafter gave his note based on the value fixed by his brothers, there is no mutual mistake as to the valuation.

5. SAME—*Testimony Received by Agreement—No Error.* Testimony taken on a trial in another action may be read in evidence by agreement and when so read complaint cannot be thereafter made of its admission.

6. SAME—*Default of One Party to a Settlement—Settlement Not Vitiated.* Where notes are given in the settlement of a family controversy and afterward one of the makers fails to pay a note thus given by him, such failure cannot be shown for the purpose of defeating a note given by one of the other parties in the settlement.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed December 11, 1920. Affirmed.

*Chester A. Leinbach,* of Onaga, and *J. K. Codding,* of Lansing, for the appellant.

*Guy L. Hursh,* of Topeka, *E. R. Sloan,* of Holton, and *W. F. Challis,* of Wamego, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered a judgment on a promissory note, and the defendant appeals. William Harris died after executing his will giving to each of three of his sons, William J. Harris, Nathan C. Harris, and Owen Harris, eighty acres of land, and to another son and to a daughter $100 each. The will was probated; its terms were fully complied with; the estate was settled, and the executor discharged. Other facts recited in special findings made by the court were as follows:

"4. On the day the will was admitted to probate it was opened and read by the probate judge of Pottawatomie County, Kansas. There were present Owen Harris, George Harris, William J. Harris, Nathan C. Harris and the witnesses to the will. When the will was read George Harris expressed dissatisfaction with the will and said he would contest the will. It was also claimed at that time that Owen Harris, the defendant, owed the estate the sum of four hundred dollars.

"5. On the 3d day of July, 1911, William J. Harris, George Harris, Nathan C. Harris and Owen Harris, met at the old home place for the purpose of attempting to agree on an adjustment of their differences, and make an amicable settlement of their father's estate. Each of the boys who received real estate expressed a desire to make a settlement and avoid litigation.

"6. It was at this meeting of the brothers suggested that the land be sold and the money equally divided among the children. This Owen Harris objected to, and said he would pay as much as Will or Nathan if the terms of the will were carried out.

"7. The defendant, Owen Harris, refused to make any estimate on the value of the land. He was familiar with the land and knew its value. The land was estimated by William and Nathan at fifty-five dollars per acre, and on this basis it was concluded that Owen, Nathan and William should each pay to George and Minnie the sum of eight hundred eighty dollars each. It was agreed between all of the brothers that the said Owen Harris, William J. Harris and Nathan C. Harris would each execute a note to Minnie Bottom in the sum of eight hundred eighty dollars, and notes in like amount to George Harris, and that the terms of the will of William Harris, deceased, should be carried out, and that no contest or litigation be had concerning said estate.

"8. The notes were executed in accordance with the agreement, payable in one year, and it was further agreed that the notes should be held in the Havensville State Bank until they were due. They were not to be negotiated as negotiable instruments, and at maturity the notes were to be delivered to the payees therein.

"9. The notes were duly executed and delivered to Ira Eddy to be held by the Havensville State Bank until their maturity, and on maturity

the note in question was delivered by the said Ira Eddy to the agent of the plaintiff, James Bottom. All of said notes have been paid except the note sued on in this action, and the note given by defendant to George Harris. The payments provided for in the will have been made. The note sued on in this action is in words and figures as follows:

"$880.00                        HAVENSVILLE, KANSAS, July 3, 1911.

"One year after date we promise to pay to the order of Minnie Bottom at the Havensville State Bank, Havensville, Kansas, eight hundred eighty and $^{no}/_{100}$ dollars with interest at ... per annum from date until paid, if not paid at maturity. Value received. We, the makers, signers, endorsers and guarantors of this note severally waive demand, protest, notice of protest and non-payment thereof.                        OWEN HARRIS.

"10. The court further finds that said note was duly and legally delivered to the plaintiff herein, and was given for a valuable consideration, and that the said defendant was not defrauded and that there was no mutual mistake between the parties."

On these facts the court made the following conclusion of law:

"The [court] finds, as a conclusion of law, that the note sued on in this action is valid, and that the plaintiff is entitled to recover the sum of $880.00 with interest at 6 per cent per annum from July 3, 1912."

The defendant refused to pay the note given by him to the plaintiff, and this action resulted.

1. The defendant complains of the overruling of his demurrer to the evidence of the plaintiff, and argues that there was no evidence to show a delivery of the note to the plaintiff. The findings of fact show that when the note was placed in the bank it passed beyond the control of the defendant. It then became the property of the plaintiff, and was afterward delivered to her agent. These facts were stated in the eighth and ninth paragraphs of the findings of the court and were supported by evidence. The demurrer was properly overruled.

2. Another contention of the defendant is that there was no consideration for the note; that the note was merely an executory contract evidencing a promise by the defendant to give to the plaintiff as a gift the sum of $880. To ascertain the consideration for the note we again refer to the findings of fact which show that there was a will, dissatisfaction with its provisions, a threatened contest, and a compromise and settlement of the differences between the members of the family interested in the will. Settlements of controversies of this character are favored by the law.

(*Marsant v. Marsant,* post, p. 12, 57 Pac. 958; *Bailey v. Wilson,* 21 N. C. 182; *Stevens v. Clough,* 70 N. H. 165; 8 Cyc. 504; 40 Cyc. 2107.)

Under the agreement the operation of the will was not interfered with; the property went as directed by it. When the devisees and legatees became the owners of the devised and bequeathed property, they could thereafter dispose of it as they saw fit, and they made the agreement set out in the findings of the court. The settlement of the controversy was sufficient consideration for the agreement and it was binding on all the parties to it.

3. The defendant argues that George Harris, who threatened to contest the will, had no right to speak for the plaintiff; that he was not her agent; that she was not present at the deliberations which resulted in the compromise; that she was not threatening to contest the will; and that for these reasons there was no consideration for the note.

In 8 Cyc. 502, this language is found:

"A compromise may be effected by persons representing and acting under the authority of the parties to a controversy, express or implied from their relations; but no such compromise by a third person is binding in the absence of such authority, or unless it be subsequently ratified either expressly or by such acts of the interested parties as clearly evidence their intention to accept such settlement."

To the same effect is 5 R. C. L. 888. Unauthorized contracts may be ratified by those for whose benefit they are made. (*Waterson v. Rogers,* 21 Kan. 529; *Ehrsam v. Mahan,* 52 Kan. 245, 34 Pac. 800; *Hartwell v. Manufacturing Co.,* 78 Kan. 259, 97 Pac. 432; *Wagon Co. v. Wilson,* 79 Kan. 633, 101 Pac. 4; *Meador v. O'Dowd,* 85 Kan. 878, 118 Pac. 695.) When the plaintiff accepted the note to her and commenced this action to compel its payment, she ratified the contract made for her benefit by her brothers, even if no one of them had authority to act for her at the time the compromise contract was made. One person may make a contract for the benefit of another who may enforce it. (*Clay v. Woodrum,* 45 Kan. 116, 25 Pac. 619; *Howell v. Hough,* 46 Kan. 152, 26 Pac. 436; *Winans v. Manufacturing Co.,* 48 Kan. 777, 30 Pac. 163; *Hargadine v. Swofford,* 65 Kan. 572, 70 Pac. 582; 13 C. J. 325.) An application of this rule is found in the law of mortgages, where the purchaser of mort-

gaged land assumes and agrees to pay the mortgage. (*Schmucker v. Sibert,* 18 Kan. 104; *Morlan v. Loch,* 95 Kan. 716, 149 Pac. 431.)   The consideration for the settlement of the controversy between her brothers upholds the contract as to the plaintiff.

. 4.  It is urged that there was a mutual mistake made by all the parties in arriving at the amounts that should be pa'd to George Harris and to the plaintiff.   The defendent knew the basis on which the settlement was made and understood those facts as well as any of his brothers.   The facts stated in the seventh paragraph of the findings made by the court were supported by the evidence.   The present situation comes within the rule declared in *Brooks v. Hall,* 36 Kan. 697, 14 Pac. 236, where this court said, "It is not enough to invalidate the compromise and settlement, that one of the parties made an error in the calculation of the items of his claim."   (Syl.)  If the land devised to the defendant was overvalued in the compromise agreement, he had knowledge of that fact and should have objected at the time.   He made no objection; he ascertained the amount that he should pay on the basis of that valuation; he gave his note based on it; and he is concluded thereby.   There was no mistake within the meaning of the law concerning mutual mistake of the parties to a contract.

5.  The abstract shows that objection was made to the admission of the testimony of George Harris given in another action.   Complaint is now made of its admission, but it appears that in this court a stipulation of the parties has been filed in which it is stated that the evidence of George Harris was admitted by agreement saving the right to object for competency, relevancy, and materiality.   The objection made did not present any of these three grounds; therefore this complaint is without foundation.

6.  Complaint is made of the exclusion of evidence offered by the defendant to show that William J. Harris had not paid all the notes given by him.   William J. Harris had testified he had paid those notes, but whether or not he had paid the notes given by him was wholly immaterial in the present action.   He might have had such defenses or counterclaims as would prevent a recovery against him, but those defenses or counterclaims cannot avail this defendant.   Even if William

J. Harris refused to pay without sufficient reason, the obligation of the defendant on the note given by him must rest on the validity of the compromise agreement.

The judgment is affirmed.