No. 27,107.

GEORGE H. WELD, *Appellant,* v. EMERSON CAREY et al., *Appellees.*

SYLLABUS BY THE COURT.

1. MINES AND MINERALS—*Oil and Gas Leases—Contract for Benefit of Lessors as Third Parties—Sufficiency of Identification.* A committee of landowners was authorized to secure the drilling for oil or gas on certain blocks of land. It secured leases on some seven thousand acres in two blocks in one vicinity and entered into an agreement with certain contractors, who agreed to drill a well on each block of land within a specified time or in lieu thereof to pay rental of $1 per acre. The leases giving the legal descriptions of the land and the names of the lessors were placed in escrow in accordance with the terms of the agreement. *Held,* the identification of the parties (lessors) was sufficiently definite that they were authorized to recover the rental described in the agreement upon failure of the contractors to drill as agreed.

2. CONTRACTS—*Contract for Benefit of Third Party—Sufficiency of Identification.* The name of the person to be benefited by a contract need not be given if he is otherwise sufficiently described or designated, and where he is sufficiently designated or described he may recover on a contract made for his benefit.

3. ESCROWS — *Necessity of Performance of Condition — Superseding Another Agreement.* The provisions of an agreement to drill for oil or gas considered in connection with certain leases placed in escrow in conformity therewith, and *held,* the agreement was not superseded by or merged in the leases.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed February 12, 1927. Reversed.

*F. Dumont Smith, Eustace Smith,* both of Hutchinson, and *Ben Jones,* of Lyons, for the appellant.

*Walter F. Jones, C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover rental for certain land in Rice county in lieu of the performance of an oil drilling contract. Defendants prevailed and plaintiff appeals.

The facts are substantially these: Early in 1924 activity in oil development was started in Rice county. On February 20 a number of landowners met at Little River and appointed a committee to outline and canvass the territory, secure leases in blank and hold them until a drilling company could be secured to do the work. The com-

<hr/>

Contracts, 13 C. J. pp. 705 n. 4, 711 n. 32; 6 R. C. L. 882. Escrows, 21 C. J. pp. 865 n. 1, 880 n. 61, 883 n. 94, 895 n. 68; L. R. A. 1916A, 502; 10 R. C. L. 635.

mittee proceeded, and on March 10, 1924, entered into an agreement with the defendants, Carey and Shears, which reads:

"Whereas, there has been appointed a committee consisting of Geo. H. Weld, J. L. Flock, E. H. Hodgson, A. J. Smith, and J. J. Hatfield, by a large number of landowners in the following-described sections of land for the purpose of securing the drilling of oil and gas wells on said blocks of land and are willing to put their leases in escrow, to be delivered to the parties or association that is willing to finance and put down an oil or gas well on said blocks, on the commencement of actual drilling operations toward the drilling of said well.

"Now, therefore, we, Emerson Carey and J. H. Shears, in consideration of the mutual covenants and agreements hereinafter contained, agree with the above-named committee, hereinafter called parties of the first part, that they will procure the financing and drilling of an oil or gas well on the blocks of land hereinafter described to a depth of 3,500 feet, unless oil or gas is found in commercial quantities at a lesser depth, provided the said committee will procure valid oil and gas leases on not less than 3,280 acres of land in each block, situated in the following sections of land, to wit:

"Block No. 1, to be known as Carey & Shears Little River No. 1, consisting of sections or parts of sections No. . . . . , in Rockville township 20, range 6, Rice county, Kansas.

"Block No. 2, to be known as Carey & Shears Little River No. 2, consisting of sections or parts of sections No. . . . and such other sections or parts of sections as may be added hereafter, all in township 19, range 6, Rice county, Kansas, this same to be sufficiently solid to meet the approval of said Emerson Carey and J. H. Shears; said leases to be in the hands of the first parties and assigned to R. L. Carrillo, trustee, and placed in escrow, with the agreement that said leases are to be all delivered to the said R. L. Carrillo, trustee, when actual drilling operations are commenced on any piece of land leased in the above blocks by the said committee and to be delivered to said R. L. Carrillo, trustee.

"In consideration of the above the said committee agrees to secure leases for oil and gas purposes on not less than 3,280 acres of land in each of the above-described blocks, and to procure an agreement on the part of all of said lessors in accordance with the provisions above outlined.

"Said Emerson Carey and J. H. Shears agree further that they will commence actual drilling operations on said blocks of land, as follows: On block known as Carey & Shears Little River No. 1 within 60 days, and on said block No. 2, known as Carey & Shears Little River No. 2, within 100 days from the time said blocks of 6,760 acres as above provided shall be procured, assigned and placed in escrow, and for failure to comply with the above the said parties, Emerson Carey and J. H. Shears, shall pay a rental of one dollar per acre.

"It is further agreed by Emerson Carey and J. H. Shears that when drilling operations commence the funds of the drilling company or companies, sufficient to finance each well in full, will be deposited in the Citizens State Bank

of 'Little River and disbursed from there to drilling contractors and to satisfy the obligations of the company; as applies to Carey and Shears Little River Nos. one and two drilling projects.

"Witness our hands this 10th day of March, 1924.

GEO. H. WELD (and others),
EMERSON CAREY, H. J. CAREY,
J. H. SHEARS, GEORGE C. SHEARS."

The contract was confirmed at a meeting of the landowners March 14 following and the committee proceeded to complete its acquisition of leases. On May 7 an escrow agreement was executed at Little River by the parties which reads:

"ESCROW AGREEMENT.

"Entered into this 7th day of May, 1924, by and between Geo. H. Weld, J. L. Folck, E. H. Hodgson, A. J. Smith, and J. J. Hatfield, a committee appointed by the landowners in the vicinity of Little River to secure a drilling contract on two blocks of acreage, and Emerson Carey and J. H. Shears, who have fulfilled the requirements of the above-named committee. Under this agreement the following leases having been completed by the committee through the placing the name R. L. Carrillo as trustee for Carey & Shears, of Hutchinson, Kansas, are hereby placed in escrow in the Citizens State Bank of Little River, Kansas, to be delivered to Carey & Shears through R. L. Carrillo, trustee for Carey & Shears, upon their performance under the terms of the original contract—a copy of which is hereto attached.

"These leases are all duly numbered from one to sixty-three consecutively. Those leases bearing numbers 57, 59, 60, 61, 62 and 63 are not entirely valid as of this date, and it is hereby agreed by Carey & Shears that these leases will not be recorded until such time that said leases are made valid on Carey & Shears account. The following described leases are hereby acknowledged by the parties to this agreement to be in escrow, and the Citizens State Bank is hereby instructed to deliver same to Carey & Shears, through their trustee, in accordance with the terms of attached contract: (Then follows list of names of owners and descriptions of their lands.)

"The foregoing is a true list of the leases numbered and is hereby accepted by all parties to the agreement.

"Witness our hands, etc.

"The above described leases, together with the original ·contract herein described, hereby receipted for escrow this 7th day of May, 1924.

"THE CITIZENS STATE BANK OF LITTLE RIVER, KANSAS,
By W. H. BURKE, President."

The same day defendants addressed a communication to plaintiffs which reads:

"We hereby accept the acreage in the two blocks known as Carey & Shears Little Rivers Nos. one and two as completed, with a total acreage as represented by leases now in escrow in the Citizens State Bank of Little River,

Kansas, and do hereby make the original contract operative and time start to run from May 7, 1924.

"We will immediately finance a company and we will agree to start a well by July 6th, 1924, on Block No. one and the remaining well of Block No. two by August 14, 1924, or we will pay rentals as per the original agreement."

"Very truly yours,

CAREY & SHEARS,

By LLOYD S. BROWN.

"The above is hereby accepted by the undersigned committee.

GEO. H. WELD, et al."

There was evidence that the defendants erected a derrick on one location, but did no drilling. The action was to recover the rental payments of $1 per acre. Claims of the various owners were assigned to the plaintiff to the extent of 7,112 acres.

Trial was to the court. A memorandum opinion was filed in which the court found substantially that the action was based upon a certain contract entered into between Carey and Shears and certain parties designated as a "committee"; that the committee was to secure certain oil leases covering a certain amount of acreage, which leases when secured were to be deposited in escrow, duly assigned to a trustee, and delivered to the trustees upon Carey and Shears beginning operations within sixty days on block No. 1 and within 100 days on block No. 2, by beginning to drill a well, one on a tract in each block within said time. Carey and Shears further agreed to deposit sufficient money to cover the expenses of this drilling to 3,500 feet. Upon failure to comply in starting operations, Carey and Shears would pay a rental of one dollar per acre. Acting under the authority of the contract the committee, assisted by Carey and Shears, proceeded to acquire leases, which leases are substantially in accordance with the terms of the contract.

The trial court concluded that the contract authorized the committee to obtain leases; that the committee was appointed as agents of Carey and Shears to bind Carey and Shears in leases entered into by them, which comply with the contract; that the contract was not made for the benefit of the landowners, and no landowner who subsequently entered into a lease could recover for any breach of the contract between the committee and Carey and Shears, but was limited to the terms of the lease entered into by the committee under authority of the contract in controversy; that the action was not for damages for breach of contract suffered by the com-

mittee but was an action to recover for an alleged breach of a contract by landowners to which they were not parties, but were unknown and not in existence at the time of that contract and the contract was not made in reference especially to the great majority of the leases obtained; that the rule of the right of a third party to sue and enforce a contract made for his benefit had no application; that the preliminary contract was merged in the subsequent leases and the terms and conditions of the leases are controlling and not the terms of the contract; that the matter of the payment of one dollar per acre is incorporated in the leases and supersedes the matter of payment of one dollar per acre provided for in the contract in lieu of performance; that the only obligation Carey and Shears assumed was that if they did not commence wells within the specified time their rights were forfeited, unless they paid a rental of one dollar per acre which would extend the period óf performance for one year, according to the terms of the leases.

Was the committee agent of Carey and Shears to bind them in leases which complied with the contract? The contract states:

"Whereas, There has been appointed a committee consisting of Geo. H. Weld, J. L. Folck, E. H. Hodgson, A. J. Smith and J. J. Hatfield, by a large number of landowners, in the following described sections of land. . . ."

The committee was to get leases from the landowners in certain defined territory. These leases were to be deposited in escrow subject to certain stated conditions. The committee did not act for Carey and Shears. It acted for the landowners, and the landowners by executing the leases and putting them in escrow according to the contract adopted the contract as their contract with the defendants.

Was the contract for the benefit of the landowners, and have they the right to maintain this action?

"Of course, the name of the person to be benefited by the contract need not be given if he is otherwise sufficiently described or designated. Indeed, he may be one of a class of persons, if the class is sufficiently described or designated. In any case where the person to be benefited is in any manner sufficiently described or designated he may sue upon the contract." (Burton v. Larkin, 36 Kan. 246, 250.)

In *Maddock v. Riggs*, 106 Kan. 808, 190 Pac. 12, it was said:

"Upon the facts stated in the preceding paragraph the rule is applied that a third party, not privy to a contract nor privy to the consideration thereof, may

sue to enforce any part of it made for his special benefit and interest; that the promise is deemed made to the plaintiff if adopted by him though he was not a party nor cognizant of it when made." (Syl.)

"A sister who was not present at the settlement and who did not participate therein, but to whom a note was given, by accepting it and suing to recover upon it ratified the settlement, and the maker cannot avoid paying the note for the reason that the sister did not take part in the settlement." (*Bottom v. Harris,* 108 Kan. 7, 193 Pac. 1058.)

*Ross v. Bank,* 113 Kan. 213, 214 Pac. 94, was a case where a contract provided that a third party working on a farm should be paid by the bank for his services, the bank advancing money to operate the farm in order to protect its loan to the owner. Ross was not a party to the contract, knew nothing about it until some time after it was made, but had performed the services and in an action against the bank it was held the contract was for his benefit and he could recover. (See, also, *Ballard v. Bank,* 91 Kan. 91, 136 Pac. 935; *Goeken v. Bank,* 104 Kan. 370, 179 Pac. 321; *Staley v. Weston,* 92 Kan. 317, 140 Pac. 878; 13 C. J. 705, 711.)

The identification of the landowners for whose benefit the contract was being made was direct. It was in the contract itself. Had further identification been needed, it could have been found in the escrow agreement. The two agreements and the leases beyond question identify the persons for whose benefit they were made. They were known to defendants by reference to the various tracts of land enumerated in the two blocks when the original contract was executed. These persons were fully identified by name, by description of real estate owned by each, by acreage and by lease numbers, when the escrow agreement was executed. Also when the leases were gathered together and deposited. Having a right of action in themselves, each of the landowners had a right to assign it and the assignee was the proper party to sue. (*Hull v. Bonding Co.,* 86 Kan. 342, 120 Pac. 544; *Rullman v. Rullman,* 81 Kan. 521, 106 Pac. 52.)

It is contended that the escrow agreement with the leases superseded the contract; that the original contract was merged in the latter. We think not. The conditions of the escrow were never met. The leases were never taken from the depositary.

"An escrow is an obligatory writing (usually, but not necessarily, in the form of a deed) delivered by the party executing it to a third person, to be held by him until the performance of a specified condition by the obligee, or

the happening of a certain contingency, and then to be delivered by the depositary to the obligee, when it becomes of full force and effect." (*Davis v. Clark,* 58 Kan. 100, 104, 48 Pac. 563.)

"Where an instrument is deposited as in escrow, it cannot become operative until the condition upon which it is deposited has been performed or the contingency agreed upon has happened." (21 C. J. 880.)

"A bond for a deed deposited with a disinterested third party, to be by him held until a certain sum of money is paid, and then to be delivered to the obligee, is in escrow; and until the condition is performed, it is a mere nullity, and no right of action accrues or can accrue thereon to the obligee." (*Roberts v. Mullenix,* 10 Kan. 22.)

In *Taylor v. Thomas,* 13 Kan. 217, it was said:

"Whatever rights of action the plaintiffs may have had upon the contract, upon delivery of 75,000 plants, they had no right to the note, and could maintain no action upon it until after a full compliance with the conditions of the escrow. Until such time it is as though no note had ever been signed." (p. 219. See, also, 21 C. J. 865, 882, 883; 10 R. C. L. 627.)

Under all the circumstances we are of opinion the plaintiffs were entitled to recover.

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiff.