## No. 30,332.

HELEN M. SNUFFER, *Appellee,* v. EMMA WESTBROOK, *Appellant.*

(8 P. 2d 950.)

Opinion filed March 5, 1932.

*Dan Hopson,* of Phillipsburg, *Floyd W. Hobbs* and *M. A. Bender,* both of Holton, for the appellant.

*E. D. Woodburn* and *Thomas A. Fairchild,* both of Holton, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the defendant from a judgment in favor of the plaintiff quieting her title to a house and

lot in Holton, Kan., which stood of record in the name of Hattie P. Barber, deceased. The plaintiff was the adopted daughter of Mrs. Barber, and her husband, who died earlier than Mrs. Barber.

The defendant, a foster child of Mr. and Mrs. Barber, for her answer to plaintiff's petition pleaded former adjudication and a written contract between plaintiff and defendant in which for a valuable and sufficient consideration they should together prosecute an action then pending concerning the estate of Mrs. Barber and should share equally in any and all the proceeds of the estate and should treat each other as children of Mrs. Barber and each be entitled to one-half the estate of the deceased. The answer further pleaded estoppel on account of this agreement and subsequent recognition thereof and acquiescence therein. The answer concluded with a prayer for an individual one-half interest in the property involved and attached a copy of the contract.

The reply was a general denial, a special denial of *res judicata,* want of consideration for the contract, and that plaintiff had been led to believe and did believe that defendant was a legally adopted child and legally entitled to share equally with her in Mrs. Barber's estate, and that she did not learn otherwise until long after the contract had been signed, and if she had been fully advised she would not have signed the contract.

The trial court after the introduction of evidence was concluded found generally for the plaintiff.

The important question in the appeal is the force and effect of the contract signed by these two parties rather than the question of former adjudication because the merits of the former litigation did not necessarily involve an adjudication as to the rights of these two parties to inherit the estate of Mrs. Barber. The earlier case referred to here and in the contract was an action by both these parties to contest the will of Mrs. Barber that had been filed and probated, because a later will had been executed by her which, however, could not be found, the successful termination of which case would and did leave the estate intestate.

The day after the burial of Mrs. Barber the plaintiff told her attorney that they could not find adoption papers for the defendant. The executor also made request for them and it developed that the only paper of that kind or character to be found was a contract entered into between Mr. and Mrs. Barber on one hand and the Rochester Orphan Asylum on the other in 1882, whereby Mr. and

Mrs. Barber agreed to take, adopt and care for this defendant as their own child. The evidence shows that under these circumstances and by the advice of local counsel the defendant in this case declined to further prosecute the will contest case in which she was a plaintiff, along with the plaintiff in this case, without some definite understanding between them as to their relative interests in the estate of Mrs. Barber. All the negotiations and preliminaries leading to the execution of the contract by the plaintiff at her home in Missouri were by correspondence, and the force and value of the communications can therefore be weighed and considered by this court on review with equal opportunity and effect as by the trial court. It is strongly contended by the appellee that the contract relied upon by appellant was invalid for want of consideration, that the threatened withdrawal of the appellant as one of the plaintiffs in the contest of the will and setting up a defense thereto was entirely ineffectual because the contest could have been conducted by one plaintiff as well as two, and any defense she might make would be futile as it was a sure case because of certain evidence available. True, one plaintiff could contest the will as well as two, but that any defense would be futile and ineffectual and that the result was sure, is prediction in litigation that is not generally dependable. Any forbearance to prosecute or defend an action, or do an act which one is not legally bound to perform, is usually a sufficient consideration for such a contract. Of course, the claim or defense must not be one obviously invalid, worthless or frivolous. (*Dendy v. Russell*, 67 Kan. 721, 74 Pac. 248; and *Reed v. Kansas Postal Telegraph & Cable Co.*, 125 Kan. 603, 264 Pac. 1065.)

The evidence shows that the defendant in this action was a beneficiary under the will sought to be set aside to the extent of $1,000, and her forbearance from making a defense in that case and from asserting her rights under the contract of the Barbers with the orphan asylum in an appropriate action made her claim quite other than frivolous, even though the contract with the orphan asylum fell far short of complying with the statutory requirements as to legal adoption papers, as it was held in the cases of *Malaney v. Cameron*, 98 Kan. 620, 159 Pac. 19, and *Hickox v. Johnston*, 113 Kan. 99, 213 Pac. 1060. There was also the additional consideration of settlement of a family controversy which has always been recognized as a sufficient consideration for a contract or a financial obligation.

"A note given in settlement of a controversy arising between brothers and sisters over the will of their father, all of whom are beneficiaries thereunder, but one of whom is threatening to contest the will, is upon sufficient consideration." (*Bottom v. Harris,* 108 Kan. 7, syl. ¶ 2, 193 Pac. 1058.)

There was, as it appears to us, sufficient consideration to support the making of the contract between these two litigants. But the reply alleges that the contract was signed by the plaintiff when she was led to believe, and did believe, defendant was a legally adopted child and was legally entitled to share equally with plaintiff in the estate of Mrs. Barber, and that she did not learn the true status of the relation until after the contract was executed and if she had been fully advised she would not have entered into the contract. Substantially all the testimony bearing on this question is in the correspondence between Mrs. Snuffer, the plaintiff, and Judge Bender, who was attorney for her and Mrs. Westbrook in the will contest case, except the oral testimony given by Mrs. Snuffer, the plaintiff, on this trial, which was as follows:

"In April, 1929, I had a talk with Mrs. Westbrook in Judge Bender's office about setting the will aside. Judge Bender thought the will could be set aside and we made arrangements with him to file the case. Mrs. Westbrook told me that day she had her adoption papers. I received Judge Bender's letter of May 15, inclosing what purported to be Emma's adoption papers, and which I thought was. When I signed the agreement I never knew Emma Westbrook had not been legally adopted, and had I, I would not have signed the agreement. . . .

"I received the contract through the mail from Mr. Hopson, and signed it at my home. Exhibit 3 is a copy of the letter received at the time I received the contract. I also received a letter from Emma Westbrook about the same time, and exhibit C from Judge Bender before the contract, which letter I read and understood it. I did not know there was any question about Emma's adoption when I signed the agreement.

"Q. Then at the time you signed this agreement along with Mrs. Westbrook you understood, before you signed it, and at the time you signed it there was some question as to whether or not Mrs. Westbrook would inherit from Mrs. Barber if her will was set aside? A. No, I did not.

"Q. You did not understand about that? A. No.

"Q. You understood what it meant, did you not? A. To a certain extent.

"Q. What did you understand about it? A. I understood they had their papers.

"Q. Did you understand from reading this letter there was some question about that? A. Yes.

"No one was present when I signed the contract and read it before signing. After the will was set aside I received some money from the probate court. Mr. Keller first informed me, after the issue of money, that Mrs. Westbrook was not an adopted child."

The correspondence referred to begins with a letter from Judge Bender to Mrs. Snuffer, dated May 15, 1929, as follows:

"MY DEAR MADAM—Mr. Westbrook called to see me yesterday relative to the pending case for the setting aside of the purported last will and testament of Hattie P. Barber. He had with him the adoption papers of his wife, and I inclose you herewith a copy of the same which you can return to me.

"Now the situation seems to be this: While, for all intents and purposes, Mrs. Westbrook was adopted and received into the Barber family as their child, but when it comes right down to a strict construction of the law it is very questionable whether there has been a legal adoption of Mrs. Westbrook. By legal I mean such an adoption as the court would uphold. Mr. and Mrs. Westbrook realize this, and say, if there is to be any trouble over that question, they, of course, would not want to be a party to this suit, but would seek to uphold the will. After talking the matter over, it was suggested that I write you and ask you if you would be willing to concede to the adoption and consent that Mrs. Westbrook might inherit equally with you if the will is set aside, so I would like to hear from you along this line.     M. A. BENDER."

To this Mrs. Snuffer replied on May 17, 1929, as follows:

"*Mr. M. A. Bender:*

"DEAR SIR—I received your letter this a. m. and will say in reply that I do not want to fight Emma Westbrook. I believe it no more than right for her to have what is due her.     HELEN SNUFFER."

To this Judge Bender responded on May 20, 1929, as follows:

"DEAR MADAM—Yours received. I think you take the right attitude in regard to Mrs. Westbrook, for it is not her fault if her papers are not just what they should be. When Mr. Westbrook was here he had a Phillipsburg lawyer with him and I presume he will take the matter up with you further.

"M. A. BENDER."

Mr. Hopson, local attorney for Mrs. Westbrook, shortly thereafter wrote Mrs. Snuffer, stating he was in receipt of a letter from Judge Bender referring to the correspondence between him and Mrs. Snuffer about conceding equal rights to Mrs. Westbrook, and that he (Hopson) had prepared an agreement to that effect for her signature, if it met her approval. This inclosed agreement was the contract set out in the answer. Mrs. Snuffer signed it and returned it to Judge Bender, suggesting that it be signed by Mrs. Westbrook, as it at that time had been executed on her behalf by Mr. Hopson as her attorney. It was accordingly executed by Mrs. Westbrook in addition to the previous execution of it by her attorney. Mrs. Snuffer's letter returning it to Judge Bender was dated May 24, 1929, and was as follows:

*"M. A. Bender, Holton, Kan.:*

"DEAR SIR—Please find inclosed an agreement, sent me this a. m. by Emma's attorney. I have signed it, and if they have no more confidence in me or my word than that, I think it will be just as well for Emma to do the same, don't you? Tho. I don't think she could do anything. Am also sending his letter. Just do as you like with them.                MRS. HELEN SNUFFER."

The language of Judge Bender's first letter to Mrs. Snuffer is not ambiguous or in any way indefinite. He said, "It is very questionable whether there has been a legal adoption of Mrs. Westbrook," and "By legal I mean such an adoption as the court would uphold." Mrs. Snuffer, in her oral testimony, mentioned having received this letter before the contract, saying "which letter I read and understood it." Appellee argues that she was not versed in the law and should not be expected to interpret the meaning of the legal papers sent her and that the interpretation given her by her attorney was not as full and frank as it should have been. Her oral evidence and letters manifested no noticeable inability either to understand others or properly express herself, and when her attorney told her in effect that the adoption of Mrs. Westbrook was not such as the court would uphold, and she says she understood his letter, it is hard to reconcile that situation with her present contention, as expressed in one of her answers, that "I did not know there was any question about Emma's adoption when I signed the agreement." This answer she seems to have later modified by saying she did understand from reading this letter there was some question about that. We fail to see the overreaching appellee insists there was in the procuring of her signature to this contract, or the element of bad faith on the part of the defendant which would deprive her of claiming the plaintiff was estopped by her contract to claim otherwise than as it provided for an equal distribution of the estate.

We think the court erred in not holding plaintiff bound by the terms of her written agreement based upon a sufficient consideration, and in quieting the title to the property involved in the plaintiff, instead of decreeing plaintiff and defendant under the terms of said agreement to have been entitled each to an undivided one-half interest therein.

The judgment is reversed and the cause is remanded with instructions to render judgment in accordance with the views herein expressed.

SLOAN, J., not sitting.