No. 32,401

THE DERBY OIL COMPANY, *Appellant*, v. THE McPHERSON GAS COMPANY et al., *Appellees*.

(46 P. 2d 872)

Opinion filed July 6, 1935.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing* and *G. K. Purves, Jr.,* all of Wichita, for the appellant.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery* and *M. F. Cosgrove,* all of Topeka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was one for damages for breach of contract to buy natural gas in the amount of buyer's requirements under a second contract which bound buyer to furnish gas to the city of McPherson. The trial court held breach of contract was not established, and plaintiff appeals.

A somewhat extended narration of the facts and circumstances out of which the controversy arises and of the essential provisions of the contracts is necessary to a full understanding of the case. But once that is done, the answer is apparent. The interpretation and effect of the contracts is the only question necessary to be determined.

In December, 1927, the McPherson Gas Company, hereafter referred to as the gas company, as assignee of a gas franchise, acquired the right to construct and operate a gas plant and distributing system in the city of McPherson. In 1929 the gas company constructed a distributing system and has since that time furnished gas to the city of McPherson for the use of the city, and to the private consumers in the city. The gas company's franchise was not exclusive. The city reserved the right to construct its own distributing system, or to grant other franchises to other companies, and it might terminate the franchise by purchase of the plant of the gas company.

Early in 1932 the city opened negotiations with the gas company for lower rates (probably due to the discovery of natural gas in large quantities in the area surrounding the city of McPherson). The gas company did not respond. The city took various steps looking to establishment of its own system, and on March 17, 1932, entered into a contract with the Hutcherson Pipe-line & Gas Company, whereby the Hutcherson company bound itself to construct a pipe line for transmission of gas from the McPherson field to the eastern limits of the city. The city agreed to buy all of its natural gas requirements from the Hutcherson company. The Hutcherson company owned no gas production and contracted with the Derby Oil Company for all of the Hutcherson's requirements in complying with its contract with the city. The controversial portions of these contracts are set out later herein. Both contracts provided for a minimum purchase of 150 million cubic feet of gas per year.

Neither pipe line nor gas-distributing system was constructed pursuant to the above contracts.

The McPherson Gas Company, taking note of the foregoing events, consented to a reduction of its rates. The city passed an ordinance containing a new contract between the city and the gas company. On the basis of the new rates, the city agreed to take its entire natural gas requirements from the gas company. This new contract took cognizance of the contract between the city and the

Hutcherson company and it was made a condition of the agreement that the city be relieved of any obligation to the Hutcherson company. The city agreed to assign the Hutcherson contract to the gas company or to surrender it for cancellation if the gas company arranged with the Hutcherson company for its cancellation. To effectuate its purpose and duty of relieving the city from the obligation of the Hutcherson contract, the gas company purchased the stock of the Hutcherson company and agreed to perform or cause to be performed the contract between the Hutcherson company and the Derby Oil Company, and to save the officers and stockholders of the Hutcherson company from all claims and actions on account of nonperformance of that contract. In furtherance of its agreement to so protect the Hutcherson stockholders, the gas company executed a separate agreement called "guaranty contract," whereby the gas company reaffirmed its purpose and duty to perform or cause to be performed the Hutcherson-Derby contract and to protect the stockholders of the Hutcherson company. The city of McPherson, by resolution adopted on April 2, 1932, authorized the city officers to execute their consent to the foregoing arrangement between the Hutcherson company and the gas company.

On June 4, 1932, the Derby Oil Company advised the gas company by letter, that it would expect the gas company to take from the Derby all of the gas "for the requirements of the city of McPherson." The gas company replied that it intended "to take only the minimum requirements under this contract, or 150 million cubic feet per year." Thus we come to the point of this controversy.

The appellant, the Derby Oil Company, first argues that defendant, the McPherson Gas Company, became the assignee of the Hutcherson-Derby contract. There was no evidence of a formal assignment, but the gas company having acquired the stock of the Hutcherson company and installed its own officers and directors, the actual making of an assignment of this contract would have been a useless thing, and, perhaps, not for the best interests of the gas company. Viewed objectively, however, it is apparent, we think, that the object and effect of an assignment was accomplished by the acts and conduct described above. (See discussion in *Centmont Corporation v. Marsch*, 68 F. 2d 460; *Southwest Kan. Oil & G. Co. v. Argus P. L. Co.*, 141 Kan. 287, 39 P. 2d 906.) The negotiations and transactions must be viewed as a whole in determining the rights and obligations of these parties. The gas company agreed to per-

form or cause to be performed the obligations of the Hutcherson company under the Hutcherson-Derby contract. Also, the gas company assumed the city's obligation under the city of McPherson-Hutcherson contract. The Restatement, Contracts, § 136, (1), reads in part:

"(a) A promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise;

. . . . . . . . . . .

"(c) Whole or partial satisfaction of the promisor's duty to the creditor beneficiary satisfies to that extent the promisor's duty to the promisee." (See,. also, *Goeken v. Bank,* 104 Kan. 370, 179 Pac. 321.)

It is plain, therefore, that the gas company's obligations to the Derby are to be measured by the two above-mentioned contracts. An interpretation of these contracts will dispose of the case.

The city of McPherson-Hutcherson contract, which refers to the city as the buyer and the Hutcherson company as the seller, recites in a lengthy preamble that the buyer deems it advisable to buy natural gas for distribution and sale to its inhabitants and for its power plant and to do whatever may be necessary to procure or construct a system for distribution of gas in the city. The contract first provides for construction by the seller of a gas pipe line from the adjacent fields to the city gate. The contract then reads:

"1. That the buyer agrees to purchase natural gas from said seller and said seller agrees to sell natural gas to said buyer for a period of twenty (20) years from and after the date that the buyer commences to purchase gas from said seller. Thereafter and upon the expiration of said twenty (20) years this agreement shall continue in full force and effect unless and until terminated by either party hereto as hereinafter provided.

"2. That said buyer agrees to purchase all of its natural gas requirements needed to supply its distributing system, its power plant and for resale purposes from said seller and said seller agrees to sell said buyer all of the natural gas for such requirements of said buyer, and said buyer agrees to pay for and take from said seller for said uses not less than one hundred fifty million (150,000,000) cubic feet per annum during the life of this contract."

. . . . . . . . . . .

"This agreement shall be executed in duplicate and shall be binding and inure to the benefit of the parties hereto and to their respective successors and assigns. No assignment of this contract by the seller, however, shall relieve the seller of its obligations hereunder, without the express consent in writing of the buyer."

The Hutcherson-Derby contract refers to the Derby as the seller and the Hutcherson company as the buyer. The contract provides:

"The seller hereby sells and agrees to sell and deliver at the mouth of the

well or wells to the buyer all its share of merchantable gas not in excess of five hundred million (500,000,000) cubic feet, in its natural state, produced from either gas wells or combination oil-and-gas wells now drilled and which may hereafter be drilled upon the following tracts of land situated in McPherson county, . . .

"The buyer agrees to purchase at the mouth of the well or wells located upon the aforesaid tracts of land a minimum of one hundred fifty million (150,000,000) cubic feet per year of gas (if the interest of the seller in said wells is capable of producing such an amount of gas) in its own natural state during the term of this contract, . . .

"This contract shall be in effect for five (5) years from its date.

"Buyer agrees to purchase from the seller all of its requirements to comply with a certain gas contract entered into by and between the buyer and the city of McPherson, Kansas, up to a maximum of five hundred million (500,000,000) cubic feet per year, provided the seller can furnish that amount of gas from its interest in the gas and combination wells now located on the aforesaid tracts of land and/or from any other gas-producing wells which may hereafter be drilled upon said tracts of land (it being understood and agreed that the seller is under no obligation to drill any more well or wells upon said tracts of land.)

. . . . . . . . . . . . . . . . .

"Said buyer agrees to commence taking and purchasing gas from wells located on the aforesaid properties within ninety (90) days from the date hereof, and in the event buyer does not commence to take and purchase said gas within said time, the buyer shall pay the seller the same as if it were purchasing gas from said tracts of land, at the rate of four hundred ten thousand nine hundred fifty-seven (410,957) cubic feet of gas per day, at the price and in the manner hereinafter provided for the payment of all gas purchased under this agreement; provided, however, that in such event when said buyer actually commences taking said gas said buyer shall have credit for gas actually paid for as above provided, but in any event the said buyer shall pay for a minimum of one hundred fifty million (150,000,000) cubic feet each year, provided the said well or wells producing gas from said tracts of land are capable of producing such an amount of gas.

. . . . . . . . . . . . . . . .

"All of the covenants, stipulations, terms and conditions of this agreement shall extend to and be binding upon the respective heirs, legal representatives, successors and assigns of the parties hereto."

In its conclusions of law the trial court held the city of McPherson was under no obligation to acquire or construct a gas-distributing system; that the city was obligated to purchase from the Hutcherson company the amount of gas needed to supply the city's needs; that the Hutcherson company was bound to purchase gas from the Derby in amount limited by the requirements of the city as a municipality and further limited by the 150 million cubic feet minimum

requirement of the Hutcherson-Derby contract; and that as this minimum was purchased there was no breach of contract and there could be no recovery.

We affirm these views of the trial court. The defendant, the McPherson Gas Company, was obligated to the Derby to the extent only of the Hutcherson company's obligations. The obligations of the Hutcherson company were (1) to purchase from the Derby whatever gas the Hutcherson company required to discharge its contract with the city; and (2) to purchase in any event 150 million cubic feet of gas per year as a minimum. The trial court found—and there is no contention to the contrary—that the gas company purchased the minimum of 150 million cubic feet. The requirements of the city were found to be approximately 122 million cubic feet per year, and as the obligation to purchase in the amount of the city's requirements is the lesser of the two contractual obligations, the performance of the greater duty by purchasing the minimum of 150 million cubic feet, operates as full performance of the contract. The fact that the city changed its plans and abandoned the idea of establishing its own distributing system and competing with the gas company for the business of supplying the consumers of the city, and consequently had no requirement for gas for resale purposes, is not a matter open to objection from the Derby. The city did not bind itself to construct a distributing system and sell gas to its inhabitants. In fact, it is apparent from the contract that it guarded against assuming the burden of such an undertaking. The city's purpose and intention, manifestly, was to assure a gas supply adequate to its needs in case it should venture into the uncertainties of municipal ownership. The duty in this respect was in a sense unilateral, and there was no change in position or prejudicing conduct which might operate to bring into being an enforceable obligation on the part of the city to purchase gas for resale.

The appellant cites the case of *City of Holton v. Kansas Power & Light Co.*, 135 Kan. 58, 9 P. 2d 675, where in considering a city's contract to purchase all the electric current used by it, the court held there was an implied promise not to purchase elsewhere. But here there could be no implied promise of the city of McPherson affecting the purchase of gas by private consumers. The plan of the city to engage in the gas business did not necessarily contemplate the discontinuing of service by the gas company. The city might not have been able to procure away from the gas company more

than a small percent of those taking from the gas company. Appellant also cites the case of *Southwest Kan. Oil & G. Co. v. Argus P. L. Co.*, supra, as bearing on interpretation of contracts which provide for gas in amount of requirements. While that case can be distinguished from the present one in the facts involved, the rule therein announced for interpretation of written contracts which requires that force and effect be given to the meaning that would be attached to the writing by a reasonably intelligent person in possession of all the facts, is exceedingly relevant to the situation here presented. When the contracts involved here are viewed in the light of the foregoing rule, there emerges but one reasonable and natural conclusion, which is the one reached by the trial court, that no breach of contract was established and there could be no recovery.

This conclusion makes it unnecessary to consider the other points raised and forcibly argued by appellant.

The judgment is affirmed.