No. 42,324

ORMAN L. MILLER, Executor of the Will and Codicil of Fern F. Henery, Deceased, *Appellee*, v. J. C. HIGGINS, *Appellant*, and HAVENSVILLE STATE BANK (Defendant).

(366 P. 2d 257)

Opinion filed November 10, 1961.

*Hal C. Davis*, of Topeka, argued the cause, and *W. Kenneth Wilke*, also of Topeka, was with him on the briefs for the appellant.

*William Hergenreter*, of Topeka, argued the cause, and *John W. Brookens*, of Westmoreland, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action to determine the ownership of $23,666.64 in a checking account in the Havensville State Bank. The plaintiff (appellee), Orman L. Miller, executor of the estate of Fern Henery, initiated this action asserting that the account was an asset of the estate of the deceased and should be distributed according to the general terms of the will and codicil. It is contended by the defendant (appellant), J. C. Higgins, that he had full ownership of this account by virtue of the right of survivorship in joint tenancy. He urged that the joint tenancy could be supported under contract or gift theories. The bank was made a defendant so that it could

be directed to pay the proceeds of the account to the rightful owner after a judicial determination.

On the issues joined between the parties the trial court heard the evidence of the respective parties and made findings of fact and conclusions of law. From a judgment in favor of plaintiff, defendant J. C. Higgins appeals.

There is little dispute about the pertinent facts. The trial court found that Fern Henery and W. A. Henery, her husband, prior to the latter's death, maintained a checking account in the Havensville State Bank. On January 24, 1952, after the death of her husband, Fern Henery, a part-time employee of the aforementioned bank, had the name of her brother J. C. Higgins inserted upon the ledger sheet of this account in place of her husband's name. The account then read, "Fern Henery or J. C. Higgins and to the survivor of them upon the death of either." As a matter of practice the bank, at that time, did not require signature cards and issued pass books only upon request. They considered the ledger primary evidence of ownership. However, the bank, at the request of Fern, did issue a pass book which was identified only in her name. All deposits and withdrawals were made by her and in her name until ten days immediately preceding her death. The bank president as well as the only full-time employee, Miss McKee, were present when Fern requested the latter to change the account in 1952.

The court further found that Fern made substantial deposits to the W. A. and Fern Henery account and that both she and her husband checked against the account. In 1952, when the account was changed to Fern Henery and J. C. Higgins, all deposits were made by Fern Henery, the deposit slips showing her name only, and the account book had only Fern Henery's name appearing on the title page. All the checks on the account since 1952 were drawn by Fern Henery except four checks written about ten days prior to her death. These four checks were written on Fern's printed personalized check forms and were signed Fern Henery by J. C. Higgins, and two checks were drawn and signed in the same manner after decedent's death. These six checks were written during Fern's last illness and were to pay her hospital and doctor bills.

The court also found that Fern had no other account in the bank from 1952 until her death; that defendant Higgins never actually knew that his name was on the account until about ten days before

Fern's death; that Higgins never discussed the joint account with the officers of the bank or with anyone connected with the bank prior to the death of Fern, nor did the bank at any time have a signature card or any other agreement with Higgins; that subsequent to 1952 there was no further discussion of the account between the deceased and any of the bank officials.

The court further found that while the evidence was clear as to the title the deceased desired to have entered on the ledger sheet January 24, 1952, there was no evidence other than the naked wording as to the intention of the deceased as to the ownership of the account or of the rights of defendant Higgins therein. While the president and Miss McKee testified that they considered the account to be joint, they would not have cashed a sizeable check drawn by defendant Higgins without first consulting Fern, and that it was clear from the evidence that there was no express agreement between the deceased and the defendant bank as to the ownership of the account except that which, if any, might be implied from the title of the account itself. It was also clear that there was never any express agreement between the defendant Higgins and the deceased or defendant Higgins and the defendant bank as to the ownership of the account and the rights of defendant Higgins therein.

The trial court was unable to find sufficient evidence to support the naked wording of the ledger and stated:

"While the evidence in this case cannot be said to be either clear or satisfactory, after a careful consideration of all the facts and circumstances, from which the intention of the deceased, or a contract or agreement between all of the parties concerned, could be implied, we cannot find sufficient evidence upon which to base a conclusion that the defendant should be adjudged the owner of the account in question upon any of the theories advanced by him."

The court concluded that there was insufficient evidence to sustain either a gift or a contract in joint tenancy with right of survivorship in Higgins, and that the money was an asset of the estate, and entered judgment accordingly.

G. S. 1949, 58-501 reads in pertinent part:

"Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created:  . . ."

Under the express provision of the statute a joint tenancy may be

created in personal as well as in real property. (*In re Estate of Biege*, 183 Kan. 352, 327 P. 2d 872, and cases therein cited.) It is unnecessary to historically reiterate the law of joint tenancy, but it is important to emphasize again how "clear" the intent of the parties must be in finding that joint tenancy was intended.

In *Spark v. Brown*, 167 Kan. 159, 205 P. 2d 938, we said that when one desires to create a joint tenancy with the right of survivorship language must be used to make that intention clear, otherwise it will not be created. (See also *Malone v. Sullivan*, 136 Kan. 193, 14 P. 2d 647; *Riggs v. Snell*, 186 Kan. 355, 350 P. 2d 54; rehearing denied, 186 Kan. 725, 352 P. 2d 1056; *In re Estate of Swingle*, 178 Kan. 529, 289 P. 2d 778.)

In an article entitled "Jointly Owned Property and Its Disadvantages," written by Mr. James D. Dye of the Wichita Bar, and appearing in *The Journal of the Bar Association of Kansas* (21 J. B. K. 351, 363 [May, 1953, No. 4]), after reviewing several of our cases Mr. Dye stated, "The issues involved in the Spark and Malone cases do not point up any particular disadvantage in joint ownership but they do emphasize the care and attention required in establishing such ownership where it is in fact intended and desired by the parties." (p. 363.)

Under the provisions of G. S. 1949, 9-1205, bank deposits may be made in the names of two or more persons, including minors, payable to either or any of them, or payable to either or any of the survivors or the sole survivor, and such deposits or any part thereof or any interest thereon, may be paid to or on order of any of said persons whether the other or others be living or not; and the receipt, order, or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made. Both *Malone v. Sullivan*, supra, and *Spark v. Brown*, supra, emphasize the fact that the mentioned provisions of the statute were enacted solely for the protection of the bank paying under such agreement. In the Malone case it was stated, "This statute, however, does not attempt to define the right of a surviving joint depositor as against third parties who may claim an interest in the fund." (p. 196.) (See also Mr. Dye's article 21 J. B. K. 351, 363). In the Spark case we held that this part of the statute (G. S. 1949, 9-1205) was designed for the protection of the bank in the making of payments. It has nothing to do with the ownership of the fund as between the two parties.

Defendant Higgins conceded that the aforementioned statute dealing with joint accounts is for the protection of the bank and is of no value in the determination of ownership of such account. The record shows that Fern not only had a pass book issued to herself alone but that she also used her own printed personalized checks, and that during the period from 1952 to the time of her death she continued to treat the account as her sole property, depositing and withdrawing large sums of money in her own name and for her own business transactions. She had no other checking account.

No useful purpose would be gained in prolonging this opinion as the law on joint tenancy with right of survivorship has been thoroughly discussed in our previous decisions, and we are of the opinion that this case is controlled by *Spark v. Brown,* supra. Within the boundary of the strong language of G. S. 1949, 58-501, which is not here challenged, the court simply failed to find evidence sufficient to amount to "clear" intent to create a joint tenancy.

*Regardless of the theory upon which the joint tenancy is sought* to be established it ultimately will be resolved on the clarity with which the intent of the grantor is expressed. The intent of the grantor is basic and is derived clearly from the facts and circumstances of each case. In the instant case there does not seem to be any one thing other than the naked words which would import the creation of joint tenancy, and the meaning of those words is completely rebutted by the facts and circumstances evidencing intent, both at the inception of the account and at such times subsequent thereto as are pertinent. We have carefully examined the entire record and find no reason to say that the findings of the trial court were contrary to the evidence. In fact, we are of the opinion that it is clear that the evidence in this case was insufficient to establish a joint tenancy with right of survivorship on any theory asserted by defendant Higgins.

The findings and judgment of the trial court being sustained by sufficient competent evidence, the judgment must be affirmed.

It is so ordered.

SCHROEDER, J., dissenting: This decision must be controlled by the only competent evidence in the case upon which the trial court made specific findings. These specific findings, in my opinion, are inconsistent with the conclusion ultimately reached by the trial court.

It must be conceded under G. S. 1949, 58-501, that a grant of personal property to two or more persons creates in them a tenancy in common with respect to such property unless the language used in such grant makes it clear that a joint tenancy was intended to be created. Here the only written evidence of the contract establishing the grant by Fern Henery was the ledger account with the Havensville State Bank. It was titled "Fern Henery or J. C. Higgins and to the survivor of them upon the death of either." These are the "magic" words commonly regarded by decisions of this court as clearly creating interests in joint tenancy with right of survivorship. In other words, the intention of the grantor where such words are used is clearly indicated.

Now, if it becomes necessary to go beyond the written evidence of such grant or contract to establish the intention of the grantor, the inquiry should be confined to the time the contract was entered into, *without reference to subsequent events or circumstances*, since it is only the intention of the grantor at the time of the creation of such account that is material. (See, *Brewer v. Schammerhorn*, 183 Kan. 739, 332 P. 2d 526.)

With this rule in mind what was the intention of Fern Henery? For many years she had an account in the Havensville State Bank with her husband titled "W. A. Henery or Fern Henery and to the survivor of them upon the death of either." Her husband died in 1951 or 1952 and *as the surviving tenant of such joint account, Fern Henery directed the bank* (both Miss McKee, the cashier at the bank, and W. E. Shane, president of the bank, being present) *to change her account* to read: "Fern Henery or J. C. Higgins and to the survivor of them upon the death of either." At the time Fern Henery was serving as a temporary employee of the bank and directed Miss McKee to change the ledger sheet. In accordance with the foregoing and other competent evidence in the record the trial court, recognizing the facts to be almost entirely undisputed, found as follows

"The deceased, Fern Henery, and her husband, W. A. Henery, prior to his death in 1951, had an account in defendant bank, titled on the ledger sheet 'W. A. Henery and Fern Henery and to the survivor of them upon the death of either.' On January 24, 1952, at which time deceased was an employee in defendant bank, she requested Hazel McKee, cashier of defendant bank, to change the ledger title of her account, to be headed just like her and her husband's account had been. Miss McKee testified that she answered, 'Well, go ahead and change it.' The deceased replied, 'You

work here all the time, you change it.' 'So we are standing right there together and I changed it. It's my handwriting.' Miss McKee further testified that Mr. W. E. Shane, President of the bank, was present at the time. The witness Shane's testimony is substantially the same as that of Miss McKee's. Miss McKee then further testified that immediately after this request the title on the ledger sheet was changed 'while we were working together.' The evidence disclosed that from that time on the various ledger sheets pertaining to this account, that were received in evidence, carried the title, 'Fern Henery or J. C. Higgins and to the survivor of them upon the death of either.' The ledger sheet marked Plaintiff's Exhibit 15, disclosing the various items of the account for the month of December, 1958, carried the same title and was written in the handwriting of Fern Henery, the deceased. The evidence disclosed that it was the custom and practice of defendant bank, where the depositors were well known to the bank, not to require signature cards or formal contracts, and there were never any signature cards for the Fern Henery account, either the W. A. and Fern Henery account or the Fern Henery and J. C. Higgins account."

The record discloses the following testimony of Mr. Shane, the president of the bank:

"Q. As President of the bank, what type of account did you consider this to be?

"A. Well, always considered it a joint account with right of survivorship is what we considered it.

"Q. And, Mr. Shane, did you consider that such an account a joint account with right of survivorship was created right then and there when that entry was made?

"A. I supposed it was.

"Q. As far as you and the depositors were concerned the joint account had been created right then and there?

"A. Yes.

"Q. Mr. Shane, as President of the bank, and on behalf of the bank, did you consider that a joint bank account had been created at that time, that very day, that the change was made?

"A. Yes.

"Q. It was your testimony, was it not, that she desired it to be changed to the same type and form as was previously carried on the face of that ledger sheet when she and her husband held it?

"A. That was the conversation."

The record further discloses that Fern Henery was an intelligent woman, had been an executive officer of the First National Bank of Havensville at one time, and was also a large stockholder in the bank—"perhaps a controlling interest." When Mr. Shane was asked whether he ever had any discussions with her relative to the nature of a joint account, he answered: "No. She knew what a joint account was." Mr. Shane further testified that at no time was

a signature card required of Fern Henery or J. C. Higgins, and that he was familiar with the signatures of both of them. This was given as the reason why signature cards were not required of them.

Where it becomes material to establish the intention of a person at a given time concerning a given transaction this may be proved by evidence of two types: (1) The statements made at that time by the person whose intention it is sought to establish, including the circumstances surrounding such statements, and (2) acts of such person which evidence his or her intention. In my opinion, evidence of all activity in the account subsequent to its creation and prior to the death of Fern Henery is incompetent, irrelevant and immaterial as being subsequent to the event concerning which the intention of Fern Henery is material.

Even if such subsequent acts be regarded as material, they do not establish an intention inconsistent with the creation of a joint account with right of survivorship. (See cases reviewed in *Malone v. Sullivan,* 136 Kan. 193, 14 P. 2d 647.)

The fact that J. C. Higgins knew nothing of the creation of this joint checking account, and did not appear with Fern Henery at the bank when it was established, is immaterial. The legal significance of the contract entered into between Fern Henery and the bank was the creation of a joint account with the right of survivorship, wherein J. C. Higgins was a third party donee beneficiary. In *Goeken v. Bank,* 104 Kan. 370, 179 Pac. 321, it was held:

"A person may avail himself of a promise made by a second party to a third for the benefit of the first, although the latter was not a party to it and had no knowledge of it when made." (Syl. ¶ 2.)

Although stated in various ways, this point of law has been affirmed in *Weld v. Carey,* 122 Kan. 666, 253 Pac. 235; *Derby Oil Co. v. McPherson Gas Co.,* 142 Kan. 373, 46 P. 2d 872; *West v. Sims,* 153 Kan. 248, 109 P. 2d 479; *Haynes Hardware Co. v. Western Casualty & Surety Co.,* 156 Kan. 356, 133 P. 2d 574; *Holmes v. Kalbach,* 173 Kan. 736, 252 P. 2d 603, and cases cited therein.

Insofar as acceptance is required by J. C. Higgins it may be presumed where, as here, the contract is beneficial and there is no evidence to the contrary. (*Wellman v. Knapp,* 126 Kan. 473, 268 Pac. 817.)

In *Malone v. Sullivan,* supra, the court was confronted with a joint savings account in a bank, and various rules applicable to cases of this type were announced. There the trial court concluded that a joint tenancy account had not been created, but on appeal

this court reversed on the ground the findings of the trial court compelled a contrary conclusion holding the arrangement was essentially contractual, not subject to recision or cancellation, and binding on all three parties, thus holding the account to be one of joint tenancy with right of survivorship. In the *Malone* case many decisions from other jurisdictions were reviewed, and the tenor of some which are very similar to the instant case on the facts hold that a joint account with right of survivorship was established.

Clearly, *Spark v. Brown*, 167 Kan. 159, 205 P. 2d 938, involving the ownership of a share certificate in a building and loan association, has many features which distinguish it from the case presently before the court. There Henry J. Spark made application for a savings share account in the Wichita Federal Savings and Loan Association for *individual membership*, and he signed no application for a joint membership with any person. The account, which was brought into court by the president of the association at the time of the trial, showed three names, but there was no evidence as to when or by whom those names were added to the account, and the account itself did not state anything about the rights of a survivor. Furthermore, the rules of the association were that moneys deposited in the savings share account could be withdrawn only upon the presentation of a pass book by some person entitled thereto, and the pass book issued to Henry J. Spark was one for an individual account of Henry J. Spark.

The undisputed evidence in the instant case discloses the Havensville State Bank required no pass book concerning deposits or withdrawals from a checking account.

In my opinion, it is somewhat revolting to think of the many joint bank accounts in Kansas, where the surviving joint owner may ultimately be subjected to suit by an executor or administrator on the question of the *grantor's intention*, because the words "A or B and to the survivor of them upon the death of either" have been used in creating the account by so titling the ledger sheets in such account, and where this is the only written evidence of the contract establishing the account. On the question of the grantor's intention the grantor's lips are sealed by death, and in many instances the lips of the surviving joint owner will be sealed by the so-called "dead man statute" regarding statements made by the decedent. (G. S. 1949, 60-2804.)

It is respectfully submitted the trial court should be reversed.